OPINION OF THE COURT
Stanley L. Sklar, J.
A major issue presented on the trial of this consolidated matter is whether a landlord’s breach of the warranty of habitability may be excused because of the landlord’s "good faith”.
A summary proceeding for nonpayment of rent and a related action by the tenant were consolidated.
The parties stipulated that the sum of $3,600, previously deposited by the tenant with the clerk of the court, represents money due and owing to the landlord for rent, subject to partial or complete offset because of a counterclaim interposed by the tenant. The counterclaim seeks the recovery of an even larger sum, namely, $5,000, for: (1) time and lost wages for court appearances ($440); (2) money expended to make essential repairs ($452); (3) the cost of meals eaten out, inconvenience and mental anguish sustained during a period when the landlord failed to provide heat and hot water ($1,500); and (4) breach of the warranty of habitability ($2,600). (The sum of the parts is less than the $5,000 demanded.)
The first three divisions of the tenant’s. counterclaim must be dismissed because of a failure of proof.
The tenant has established a prima facie case of breaches of the warranty of habitability. (Real Property Law, § 235-b.) Although expert testimony is not required to establish damages (Real Property Law, § 235-b, subd 3), the tenant qualified as an expert in apartment rentals. He was a licensed real estate broker. He did other work in the real estate field. He is now a consultant. His consulting work has included surveys of rentals. A principal of the owner also qualified as an expert in rentals.
Damages for a breach of the warranty of habitability are *714 measured by the difference in the values of the apartment with and without the services in question. (Reichick v Matteo, NYLJ, Jan. 23, 1978, p 13, col 2.) The tenant testified to diminution of the rental value of the apartment caused by seven failures to provide service. His testimony as to reductions of the rental value was largely undisputed.
The most serious claimed breach of the warranty of habitability is the total failure to provide heat and hot water from September 27 through October 27, 1977. The tenant testified that he purchased a heater, but he presented no testimony respecting electrical charges or the cost of the heater. He testified that the value of the apartment for which he was paying a rental of $450 per month, was reduced to $50 per month, since it could be used only as a storage area. However, he and his wife continued to live in the apartment. The owner’s expert testified that a similar apartment, even without heat and hot water, had a value of $275 to $500 a month. After consideration of all of the relevant circumstances, the court finds that the value of the apartment was reduced by $275 during the time when heat and hot water were not supplied.
The owner contends that there should be no abatement of the rent because of the failure to provide heat and hot water since the failure was occasioned by the owner’s good faith replacement of the boiler. The owner shut down the old boiler and installed a new boiler at a cost of almost $27,000. The landlord errs. Failure to provide heat and hot water for 31 days manifestly constitutes a breach of the warranty of habitability. The cessation of these services was deliberate. Although the landlord wanted to ensure a constant supply of heat and hot water over the winter, it also wanted to replace the old unit with a new and more efficient unit so as to hold down fuel costs. Although the installation may have been started as promptly as the supplier could provide a new unit, the owner might, with greater forethought, have planned to have the new unit installed over the summer months, when heat is not required. More importantly, section 235-b speaks in unqualified terms of the convenant and warrant of the lessor to provide premises fit for human habitation without subjecting the occupants to conditions which "would be dangerous, hazardous or detrimental to their life, health or safety.” The only exception set forth in the statute is that "[w]hen any such condition has been caused by the misconduct *715 of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties.” This court will not add another exception so as to vitiate the effect of this remedial statute that was designed to provide tenants with some assurance of compliance by lessors with minimum standards of decency. Tenants are no longer required to assume all risks as to the condition of the apartment they rent. (NY Legis Ann, 1975, p 437.)
The parties have not referred to, and the court is unaware of any reported decision in this department which holds that good faith of the landlord is, or is not, a valid defense to a breach of warranty claim. In Goldner v Doknovitch (88 Misc 2d 88), the Appellate Term did hold that tenants were entitled to an offset for a reduction of services during a 17-day strike of Local 32B of the Building Service Employee International Union, since tenants need not pay for services they did not receive. However, the court noted (p 90) that the "[l]andlord was not an innocent victim of the subject strike; he was a participant in the dispute.”
An Appellate Term in the Second Department recently held that "[g]ood faith attempts on the part of the landlord to correct the defective condition are not a defense to a tenant’s claim of breach of implied warranty of habitability.” (Reichick v Matteo, supra.) This court adopts the rule announced in Reichick. Accordingly, if a breach of the warranty of habitability is established, the landlord’s good faith attempts to provide the service or correct the defective condition do not constitute a defense.
The court finds that the landlord is entitled to judgment against the tenant awarding it the sum of $3,265 (consisting of the sum of $3,600, deposited with the clerk of the court, less the sum of $335 awarded to the tenant on his counterclaim), and the clerk is directed to enter judgment accordingly.