JOSEPH L. TONETTI, JR., as Executor and Trustee of JOSEPH L. TONETTI, Deceased, Appellant, v GIANNI PENATI, Respondent.

Second Department, May 12, 1975

*Schwall & Carroll (George J. Malinsky* of counsel), for appellant.

*Peter F. De Gaetano* for respondent.

SHAPIRO, J. We are called upon to determine whether a warranty of habitability should be implied in the rental of premises for use as a residence. For the reasons set forth below, the common-law rule of *caveat lessee* should no longer be applied to residential leases. We hold that in such cases there is an implied warranty of habitability. We therefore affirm the judgment appealed from, which returned his security to the defendant tenant.

### THE FACTS

The plaintiff, as the executor of a decedent's estate, is the owner of a five-bedroom private house in Palisades, New York. The defendant was desirous of renting a house and was shown

the property by a broker in April, 1967. The tenant then in occupancy kept up to 10 dogs on the premises. The defendant observed four or five dogs inside the house and heard barking from a kennel in front. A terrible odor was present, but the defendant was assured by the plaintiff that it would be removed. On the day the lease was signed, and prior to its execution, the defendant, his wife and the plaintiff visited the house. The odor was still present but the plaintiff said that it would be easy to fumigate. The lease was for a period of three years at a monthly rental of $450, commencing May 15, 1967; it restricted use of the premises to a residence and contained a covenant of peaceful and quiet enjoyment.

The defendant paid one month's rent and an equal amount of security. He and his family moved in on May 19, 1967, but found that the odor persisted notwithstanding the efforts of a cleaning service retained by the plaintiff. In addition, the furnace emitted an unbearable odor and rats were observed in the house at night. The day after he moved in, the defendant telephoned the plaintiff and told him of his intention to leave. The defendant moved his family to a hotel on May 24, 1967; most of their furniture was removed on June 10, 1967 and the remainder on October 20, 1967.

Upon the defendant's departure from the premises, the plaintiff, who had a key to the house, used it to gain entry. Beginning with the month of July he had the premises cleaned periodically. The plaintiff also sought to rerent the house after the defendant's departure and, beginning with July 7, 1967, advertised the premises for rental. The house was relet as of February 1, 1968.

This action was commenced to collect rent through January 15, 1968, plus expenses allegedly incurred by the plaintiff in maintaining the property after the defendant's removal and in locating new tenants. The defendant asserted, as a counterclaim, that he had been forced to move because the condition of the house made it impossible for him to peaceably and quietly enjoy it; he sought the return of his security and damages.

The trial court held that the premises were not habitable for residential purposes; that the defendant had a right to move out; that he did so promptly; that the plaintiff, having re-entered the premises on or shortly after June 10, 1967, had deemed them abandoned and that the defendant was entitled to recover the amount deposited by him as security.

The plaintiff argues that no warranty of habitability should be implied in a lease of residential property and that he is entitled to recover rent until the time that the premises were relet, as well as the other expenses incurred by him by reason of the defendant's abandonment of the premises.

## THE LAW

It has long been the law in this State, following common-law principles, that there is no implied warranty of habitability in a rental of property. In *O'Brien v Capwell* (59 Barb. 497, 504) it was stated: "As between landlord and tenant * * * when there is no fraud or false representations or deceit, and in the absence of an express warranty or covenant to repair, there is no implied covenant that the demised premises are suitable or fit for occupation, or for the particular use which the tenant intends to make of them, or that they are in a safe condition for use; and that the principle of *caveat emptor* applies to all contracts for the letting of property, real, personal or mixed, as much as to contracts of sale".

In *Daly v Wise* (132 NY 306, 309–310) the court said: "In case the whole of an unfurnished dwelling is leased for a definite term, under a single contract which contains no covenant that the premises are in good repair, or that the lessor will put or keep them so, the law does not imply a covenant on the part of the lessor that the dwelling is without inherent defects rendering it unfit for a residence."

The rule there laid down was promulgated in an agrarian society when leases were so much considered *sales* of the premises for the terms of the leases that the tenants' interests were termed "chattels real" (1 Tiffany, Landlord and Tenant, § 12, p 46). Accordingly, once such an estate was conveyed, by lease, it was held that there were no further unexecuted acts to be performed by the landlord *(Lemle v Breeden,* 51 Hawaii 426). Thus, absent fraud or misrepresentation, once the landlord delivered possession, the lessee would have no recourse against him should the premises prove to be uninhabitable (see 6 Williston, Contracts [3d ed], § 890; 2 Powell, Real Property, par 221, subd [1]; 40 Fordham L Rev 123). In *Lemle v Breeden* (51 Hawaii 426, 430, *supra)* the court said: "At common law leases were customarily lengthy documents embodying the full expectations of the parties. There was generally equal knowledge of the condition of the land by both

landlord and tenant. The land itself would often yield the rents and the buildings were constructed simply, without modern conveniences like wiring or plumbing."

It is evident that the rationale behind the common-law rule, which likened a lease to the sale of a chattel and therefore applied the ancient doctrine of *caveat emptor,* has no rational basis in a modern, urban society. Realistically viewed, and fiction discarded, a lease of residential premises establishes a contractual relationship with mutual obligations and is not intended to be treated as a conveyance of an interest in realty. The main concern of today's tenant is that he acquire premises which he can enjoy for living purposes; he is more mobile and generally less skilled at maintenance than the agrarian tenant; repairs are more costly and dwellings, with modern plumbing and electrical facilities, are more complex. Thus, writers on the subject have supported the adoption of a rule of an implied warranty of habitability (see, e.g., 38 Fordham L Rev 225; 35 NYUL Rev 1279).

We should therefore reconsider our reliance on the ancient and outmoded principle that, in the absence of a statute, there is no implied warranty of habitability (1 American Law of Property, § 3.45; 2 Powell, Real Property, par 225, subd [2]) or, stated otherwise, the theory that "fraud apart, there is no law against letting a tumble-down house" *(Robbins v Jones,* 15 C.B. [N.S.] 221, 240; 143 Eng. Rep. 768, 776).

What was said in *Codling v Paglia* (32 NY2d 330), in expanding the scope of products liability protection, applies with equal force here. The court there said (p 339): "The dynamic growth of the law in this area has been a testimonial to the adaptability of our judicial system and its resilient capacity to respond to new developments * * *. A developing and more analytical sense of justice, as regards both the economics and the operational aspects of production and distribution has imposed a heavier and heavier burden of responsibility on the manufacturer."

By a parity of reasoning, a warranty of habitability and fitness for the purpose intended (unless specifically excluded) should be implied from the very nature of a rental for residential purposes. This view is gaining limited or total acceptance in other jurisdictions (see *Javins v First Nat. Realty Corp.,* 428 F2d 1071, cert den 400 US 925; *Lemle v Breeden,* 51 Hawaii 426, *supra; Lund v MacArthur,* 51 Hawaii 473; *Marini v Ireland,* 56 NJ 130; *Mease v Fox,* 200 NW2d 791 [Iowa]; *Green*

*v Superior Ct. of City and County of San Francisco,* 10 Cal 3d 616; *Kline v Burns,* 111 NH 87).

Since "the law, as a living organism, does not require that the dead hand of the past perpetuate remediable errors" *(Sideman v Guttman,* 38 AD2d 420, 429), we relegate to the limbo of history the orthodox view of *caveat lessee* and hold that, unless expressly excepted, there is an implied warranty of habitability when a landlord leases premises for residential use.* Accordingly, the defendant's liability for rent terminated when he quit the premises because they were uninhabitable. Under the facts in this case the court was justified in fixing that date as June 10, 1967.

The judgment appealed from should therefore be affirmed insofar as it is appealed from, with costs.

RABIN, Acting P. J., HOPKINS, LATHAM and CHRIST, JJ., concur.

Judgment of the Supreme Court, Rockland County, dated October 28, 1971, affirmed insofar as appealed from, with costs.

---

* In view of our holding that the plaintiff breached the implied warranty of habitability it becomes unnecessary for us to consider whether there was here a constructive eviction. See, however, in this connection *Heissenbuttel v Comnas* (14 Misc 2d 509), *Batterman v Levenson* (102 Misc 92) and *Tallman v Murphy* (120 NY 345).