Arthur E. Blyn, J.
The doctrine of implied warranty of habitability has been the accepted policy of many Judges of the Civil Court of the City of New York for a number of years. It has been applied in the main as a defense or setoff or counterclaim in nonpayment summary proceedings. The recent decision by the Appellate Division, Second Department, (Tonetti v Penati, 48 AD2d 25) and the enactment of section 235-b of the Real Property Law (establishing the statutory authority for the implied warranty of habitability) are proof of the validity of this concept.
There has been some dialogue as to the question of whether a party could use the implied warranty of habitability in an affirmative manner. That is suing in the first instance for damages arising out of a breach of this warranty.
This case presents an effort by the claimant to do just that. *933 The claimant, a tenant, sues the defendant, a landlord, in this small claims action for the sum of $500 for damages alleged to have been sustained by reason of "Lack of Services”.
Although the claimant designated the cause of action as one for "Lack of Services” the clear intendment of this pro se claimant was that the alleged failure to provide the services enumerated, all falling within the ambit of the key phrase "any conditions which would be dangerous, hazardous or detrimental to * * * life, health or safety”, constituted a breach of the implied warranty of habitability. The claimant testified to a deprivation of: "(1) elevator; (2) access to washing facilities; (3) intercom service; (4) heat and hot water; (5) no lock between roof and top floor.”
Claimant has resided in the building since April 1, 1973 under the terms of two successive written leases in an apartment subject to the Rent Stabilization Code.
She testified to a lack of heat and hot water on 16 days during the winter months of 1973, 1974 and 1975; to a lack of elevator service on 45 days during the years 1973, 1974 and 1975; to a total lack of intercom service from the date of her tenancy until mid-July 1975; to the lack of a lock between the roof and top floor from the date of her tenancy to the present; and to the lack of access to washing facilities (laundry room) in the basement during the time that there was no elevator service. She further testified that she lived in an apartment one floor above the ground floor and that her monthly rent was $234. The managing agent for the landlord and the superintendent (for the past two years) testified for the defendant landlord.
There was some dispute as to the content of complaints made to the managing agent and the superintendent and the frequency of such complaints. The managing agent contended that the claimant had never mentioned the lack of services complained of in this action but had referred to other complaints not in issue here. The defendant’s witnesses further testified that there was a contract for elevator maintenance during the entire period and that representatives of that company responded to trouble calls in one or one and one-half hours; that there were difficulties with the boiler which caused interruption of heat and hot water at times; that there was no dispute as to the failure of the intercom service during the period alleged by the claimant; and that access to the laundry room could be obtained by using another entrance to *934 the laundry room which required going out into the street; and that there was no lock on the roof door because it would be a violation to have a lock on such door but that it did have an interior sliding bolt.
The defendant landlord moved to dismiss the complaint at the end of the claimant’s case on the grounds that the contents of paragraph "11” of the leases barred the claimant tenant from any compensation for such lack of services and that there was a failure of proof of damages, citing Steinberg v Carreras (77 Misc 2d 774) for that proposition. The court reserved decision on the motions.
Paragraph "11” (the same in both leases) provides, amongst other things, that the "Landlord covenants to furnish, only insofar as the existing facilities provide, the following services: (a) Elevator service; Hot and cold water in reasonable quantities at all times; (c) Heat at reasonable hours during the heating seasons of the year. Interruption or curtailment of any such services shall not constitute a constructive or partial eviction unless due to the deliberate action or gross negligence of Landlord nor shall the same entitle Tenant to any compensation or abatement of rent” {italics supplied.)
The courts in Steinberg v Carreras (74 Misc 2d 32) and in Seabrook v Commuter Housing (72 Misc 2d 6) analyzed the modern landlord tenant relationship with respect to residential leases and both agreed that the concept of unconscionability should be applied to such leases. This court is in full agreement with such principle where the circumstances call for such a finding. The language of paragraph "11” is a classic example of unconscionability.
Steinberg v Carreras (74 Misc 2d 32, supra) dealt with a similar problem of lack of services but essentially restricted to erratic elevator service, a lack of hot water for a period of 12 days and a lack of heat for four weeks during the winter months. In that case however the issue arose in a nonpayment summary proceeding and was expressed in the form of a "setoff or counterclaim”. Also involved was the issue of the terms of a lease argued by the landlord to be a bar to any setoff or counterclaim. The court in Steinberg (74 Misc 2d 32, supra) calculated the damages to be the equivalent of a setoff of one week’s rent.
The Appellate Term, First Department (Steinberg v Carreras, 11 Misc 2d 774, supra) affirmed the determination of the trial court in finding for the tenants on the counterclaims but *935 found that there was a lack of adequate proof of the reduced value of the apartments as a result of the landlord’s failure to supply heat. (Citing Borchardt v Parker 108 NYS 583; Levine v Ehrenberg, NYLJ, June 11, 1973, p 18, col 2; Jackson v Paterno, 58 Misc 201, affd 128 App Div 474.)
The proof of damages in the within case is exactly the same as that proffered in the Steinberg case — that is testimony by the claimant tenant as to the number of days, and periods, of failure to provide certain services.
The Appellate Term has unfortunately rejected as a measure of damages the opinion of a court, without further evidence, as to what monetary valuation should be assessed for such periods of deprivation of services. The trial court in Steinberg (74 Misc 2d 32, 38, supra) stated: "Preliminarily, I am persuaded that the court make this determination without requiring expert testimony, which in fact was not introduced by either side in this case. The economic realities of proceedings involving residential tenants make it unlikely that such testimony would be readily available to tenants in the usual case. Moreover, I seriously doubt that statistical information about the value of apartments operated in violation of law is available in a form that permits meaningful expert testimony.” I say Amen. The decision by the Appellate Term renders meaningless the opinion of this court that the claimant may sue in an affirmative manner on a claim of breach of the warranty of habitability for damages for such breach.
The court therefore awards judgment for the claimant in the sum of six cents on the findings by the court that the defendant landlord breached the implied warranty of habitability but that there was a lack of adequate proof of damages, under the constraint of the Appellate Term, First Department, decision in the Steinberg case (supra).