OPINION OF THE COURT
Benjamin F. Nolan, J.
Did landlord breach the warranty of habitability when tenant’s apartment was without water because excessive use of fire hydrants in the surrounding area reduced the water pressure in the building?
The testimony of tenant and her witnesses at trial showed that on 1 day in June and 12 days in July of 1979 (5 of them consecutive) there was no water in her apartment, which prevented her from cooking, prevented her toilet from flushing, prevented the central air conditioner from functioning, and then rendered it impossible for her to bathe. She was additionally subjected to embarrassment when the toilet did not flush for guests at a reception in her home. And, she experienced the anxiety of not knowing for sure whether she would have water on any given day during the hot July weather. Landlord had notice of all of these deprivations but took no action to remedy them. Tenant pays a monthly rent of $558 under a lease for her apartment on the Grand Concourse in The Bronx, in a building which offers high quality shelter, services and conveniences in an area otherwise marked by deterioration and blight.
Landlord’s only witness was a borough engineer from the Bureau of Water Supply who acknowledged that complaints of lack of water in the building during July were investigated by his department, and that he personally inspected the pumps in the building. He testified that the lack of water occurred because there was "not enough pressure, due to hydrants being open and the mains not being good.” He pointed out that "the pumps cannot draw to the demand. The way this is set up, you have to get water from the main pump all the way up to the roof tank or else nobody gets any water.” After having qualified as an expert, he was asked on cross-examination what he would recommend to alleviate the condition which caused the lack of water in July, and he replied: "I would consider getting a different pump that could pump to a higher head.” It was thus indicated by landlord’s own expert that the lack of water was remediable despite excessive use of the local water hydrants.
*613 In a recent line, of cases, the defense that a strike by employees prevented landlord from furnishing essential services was rejected because there were steps which the landlord could have taken but did not to provide the essential services despite the strike. (Park West Mgt. Corp. v Mitchell, 47 NY2d 316; Goldner v Doknovitch, 88 Misc 2d 88.) The fact that the cause of the deprivation may in the first instance be rooted elsewhere does not relieve landlord from the duty to take affirmative steps to remedy the condition. In Park West Mgt. Corp. v Mitchell (supra, p 327) the Court of Appeals said: "The scope of the warranty includes, of course, conditions caused by both latent and patent defects existing at the inception of and throughout the tenancy. However, as the statute places an unqualified obligation on the landlord to keep the premises habitable, conditions occasioned by ordinary deterioration, work stoppages by employees, acts of third parties or natural disaster are within the scope of the warranty [of habitability] * * * Inasmuch as the landlord is vested with the ultimate control and responsibility for the building, it is he who has a corresponding nondelegable and nonwaivable duty to maintain it.” In that landmark decision, the Court of Appeals (supra, p 327) emphasized that "The obligation of the tenant to pay rent is dependent upon the landlord’s satisfactory maintenance of the premises in [a] habitable condition.” The condition of the premises must be in accord with the uses reasonably intended. If a tenant is deprived of an essential function which a residence is expected to provide, a breach of the warranty of habitability has occurred. A lack of water which deprives tenant (who pays $558 a month rent) of cooking facilities, toilet flushing, air conditioning and bathing is a substantial deprivation, particularly during the hottest days of the year. It is therefore clear that landlord breached the warranty of habitability by depriving tenant of an essential commodity vital to tenant’s health and safety. Tenant has thus sustained her affirmative defense and counterclaim which pleaded breach by landlord of its duty to maintain the premises in a habitable condition.
Other than the engineering expert, no witness testified at trial for landlord, who inexplicably saw fit not to offer the testimony of any principal, agent or employee to refute any of tenant’s contentions. Nor did landlord offer any evidence of any attempt to remedy the lack of water after receiving notice thereof. If this court were to accept landlord’s contention that *614 it was not obligated to do anything to remedy the lack of water because of excessive use of local fire hydrants, it would amount (as tenant’s counsel so aptly put it) to the grant of an immunity which would undermine the objectives of the warranty of habitability statute.
Inasmuch as the duty of the tenant to pay rent is coextensive with the landlord’s duty to maintain the premises in habitable condition, the proper measure of damages for breach of the warranty is the difference between the fair market value of the premises if they had been as warranted, as measured by the rent reserved under the lease, and the value of the premises during the period of breach. Such damages, however, may not include a sum awarded for embarrassment or anxiety. That damages are not susceptible of precise determinations does not insulate the landlord from liability. This court finds that the rental value of tenant’s apartment was diminished 50% on each of the 13. days of water deprivation. Calculated on the monthly rental of $558, tenant is entitled to an abatement of $120 as against the rents which tenant conceded were lawfully demanded in this summary nonpayment proceeding. But, since tenant has sustained her affirmative defensive and counterclaim for breach of the warranty of habitability, she should not be liable for attorney fees, which are hereby denied. (Park West Mgt. Corp. v Mitchell, 47 NY2d 316, supra; Kalikow Props. v Modny, NYLJ, May 2, 1978, p 5, col 1; Goldner v Doknovich, 88 Misc 2d 88, supra; Whitehouse Estates v Thomson, 87 Misc 2d 813.)
The petition was amended to include September rent. However, an amount equal to the September rent has already been paid to landlord in open court; so that, landlord is now entitled to and is hereby granted final judgment for the July balance of $551.23 plus the August rent of $556.55 less the $120 abatement — a judgment for $987.78, with a five-day stay.