OPINION OF THE COURT

Per Curiam.

Order entered February 9, 1979 (Stadtmauer, J.) reversed with $10 costs; plaintiffs motion for summary judgment upon her fourth cause of action is granted upon the issue of liability only, and an assessment of damages is ordered.
The tenant occupies a duplex apartment for which she pays monthly rental of $414.37. The property damage for which recovery is now sought arises from the latest in a series of approximately eight floods of tenant’s apartment. The floods here at issue occurred on November 8, 1977 and December 22, 1977. Tenant states that on both November 8, 1977 and December 22, 1977 the lower level of her apartment was inundated by six inches of water, which came from underneath a wall separating the tenant’s apartment from a neighboring apartment. She moved for summary judgment predicated on her fourth cause of action, i.e., breach of the warranty of habitability. In that motion she claims immediate entitlement to ascertainable damages in the amount of $2,753.95 with the balance of her damages to be determined at either an inquest or plenary trial of her remaining causes of action.
In opposition to tenant’s motion for summary judgment an affidavit of one Jerry Lee, managing agent of the subject premises, was submitted. Mr. Lee states therein that the lower level of the tenant’s apartment is "below grade”; that on the occasions complained of by the tenant extremely heavy rainfall occurred in the city, that the city storm sewers proved inadequate to remove the rainfall from the area of plaintiff’s apartment; that these drainage facilities were in any event not within the control of the landlord; and that any damage which may have been sustained by tenant’s property was caused totally by events and occurrences outside the control of *281 the landlord. Landlords argue in opposition to tenant’s motion that "the rainfall and lack of adequate drainage sewers was in no way the responsibility of the defendant”. More specifically it is contended that the implied warranty of habitability cannot be so construed as to impose a duty arising from forces or occurrences outside the control of the landlord, and since no "defect” was shown to exist in the premises, no liability may be imposed upon the landlord.
The court below in denying tenant’s motion for summary judgment rejects the tenant’s contention that strict liability devolves upon the landlord if the premises are rendered, in part or in whole, uninhabitable, and adopts the landlords’ argument that proof of a "defect” within the premises is a prerequisite to the imposition of liability upon a landlord for breach of the warranty of habitability. The court having so held noted that a question of fact was presented as to whether the flooding was caused by a "defect” within the premises or by heavy rains overloading storm sewers.
Simply stated, the tenant contends in this appeal, that irrespective of whether the premises suffer from defects per se and irrespective of whether the damages sustained by the tenant arose from conditions within the landlords’ control, the landlord may be said to have breached the warranty of habitability (Real Property Law, § 235-b) upon a mere showing (1) that the premises have been rendered, in part or in whole, uninhabitable and (2) that the condition complained of does not arise from any misconduct of the tenant.
The importance and ramifications of section 235-b were noted by the Governor of this State at the time of its enactment. In approving the bill the Governor observed: "With few exceptions, the legal principles regulating the rights of tenants to safe, sound and habitable housing accommodations are founded upon legal principles that evolved during the middle ages * * * Some judicial and legislative changes have occurred during the past half century. However, they have not been adequate to provide tenants with a direct and expeditious method of enforcing their right to housing accommodations that meet at least minimum standards of acceptability. A few courts of this state have already applied the doctrine of warranty of habitability. However, the judicial evolution of long-standing legal principles is generally a slow process. By one large step this bill moves the law of landlord and tenant into the twentieth century.” (NY Legis Ann, 1975, pp 437-438.)
*282 In Kaplan v Coulston (85 Misc 2d 745) in a well-reasoned opinion by Judge David Levy, the court concluded that under section 235-b a cause of action may be alleged based on strict liability for breach of the implied warranty of habitability. In that case the plaintiff sought to recover for personal injuries sustained when a kitchen cabinet in plaintiffs’ apartment fell and struck the plaintiff wife.
The Court of Appeals recently considered the scope of section 235-b in Park West Mgt. v Mitchell (62 AD2d 291, affd 47 NY2d 316). In that case an abatement of rent was sought by tenants of Park West Village for breach of the warranty of habitability purportedly arising out of a 17-day labor strike of maintenance and janitorial staff. The Housing Judge awarded the tenants a rent abatement of 10%. The Appellate Term, First Department, although rejecting the formula utilized by the Housing Judges to compute the amount of the abatement nonetheless affirmed the 10% abatement upon the grounds that the deprivation of essential services warranted a 10% abatement. The Appellate Division affirmed the Apellate Term. In affirming the Appellate Division, the Court of Appeals, in an opinion by Chief Judge Cooke noted (p 327):
"[SJection 235-b of the Real Property Law was designed to give rise to an implied promise on the part of the landlord that both the demised premises and the areas, within the landlord’s control are fit for human occupation at the inception of the tenancy and that they will remain so throughout the lease term.
"The scope of the warranty includes, of course, conditions caused by both latent and patent defects existing at the inception of and throughout the tenancy. However, as the statute places an unqualified obligation on the landlord to keep the premises habitable, conditions occasioned by ordinary deterioration, work stoppages by employees, acts of third parties or natural disaster are within the scope of the warranty as well”.
In commenting upon the scope of the warranty of habitability Chief Judge Cooke notes (p 328): "A residential lease is essentially a sale of shelter and necessarily encompasses those services which render the premises suitable for the purpose for which they are leased. To be sure, absent an express agreement on the contrary, a landlord is not required to insure that the premises are in perfect or even aesthetically pleasing condition; he does warrant, however, that there are *283 no conditions that materially affect the health and safety of tenants. For example, no one will dispute that health and safety are adversely affected by insect or rodent infestation, insufficent heat and plumbing facilities, significantly dangerous electrical outlets or wiring, inadequate sanitation facilities or similar services which constitute the essence of the modern dwelling unit. If, in the eyes of a reasonable person, defects in the dwelling deprive the tenant of those essential functions which a resident is expected to provide, a breach of the implied warranty of habitability has occurred.”
Admittedly on the two occasions giving rise to this action the lower level of tenant’s apartment was inundated by large quantities of water. That the flooded portion of the tenant’s apartment was below grade, that there had been heavy rainfall, which the city storm sewers could not absorb, that the landlord ostensibly exercised no control over the situation, all remain extrinsic to the impaired condition of the premises. It has not seriously been suggested that the tenant in any way caused or contributed to the flooding, and it would appear that to the extent the apartment was rendered uninhabitable, the landlord should be held liable under section 235-b of the Real Property Law.
There need be no showing that the landlord acted in bad faith or contributed to the impaired condition of the premises. In Leris Realty Corp. v Robbins (95 Misc 2d 712), in response to a claim of breach of the warranty of habitability, the landlord contended that there should be no abatement of the rent because of a failure to provide heat and hot water since the failure was occasioned by the owner’s good faith replacement of a boiler at a cost of $27,000. The court rejected that agreement holding the landlord liable irrespective of his good faith in replacing the boiler (see, also, Broadwall Investing Corp. v Zelman, NYLJ, March 27, 1978, p 14, col 1).
Regarding landlords’ protestations of being victimized by circumstances beyond their control it is of some significance that after the flooding here at issue, a sump pump was installed in the subject premises. As to the landlords’ contention that section 325-b should not be applied retroactively to leases, such as the lease herein, executed prior to the enactment of the statute, that argument was raised and specifically rejected by the Appellate Division and Court of Appeals in Park West Mgt. v Mitchell (62 AD2d 291, affd 47 NY2d 316, supra). Nor has the tenant improperly split her causes of *284 action. The causes of action asserted in the indorsed complaint are clearly intended as alternative theories of recovery and no prohibition exists against a pleading so drafted.
Since there appears to be no dispute as to the circumstances of the flooding and since no issues of fact need be resolved, summary judgment upon the issue of liability should be granted the tenánt, and the matter set down for an assessment of damages.
Concur: Hughes, J. P., Tierney and Riccobono, JJ.