*318 OPINION OF THE COURT
Aaron D. Bernstein, J.
The plaintiffs move for partial summary judgment pursuant to CPLR 3212 (subd [e]) on their fourth cause of action. This cause of action is founded upon the alleged breach of the implied warranty of habitability by the landlord, defendant Jakubiak.
The facts, essentially, are not in dispute. The McGuinness family moved into apartment 3-R of 566 Leonard Street, Brooklyn, New York, in 1962. This apartment is located on the third floor of the building beneath the roof. Krystyna Jakubiak bought this apartment house in April of 1977. When the defendant purchased the property she was aware of roof leakage problems. These tenants had not complained of roof leaks until a great rainstorm on May 14, 1978 caused their apartment to be flooded with six inches of water. The McGuinness family attempted to save their furniture and possessions with plastic bags, but this proved futile. The family had to leave their apartment that night and spent the night with relatives. The next day the plaintiffs attempted to clean their home; the damage to the apartment was such that the three McGuinness children had to live separate from their parents in the homes of various relatives for about 10 weeks. The family was reunited when they reoccupied their apartment on August 1, 1978. The plaintiffs’ professional claims adjuster placed the claimants’ personal property damage at $13,501, and the plaintiffs estimate that they expended $2,000 in extra living expenses. In their fourth cause of action they demand $15,600 in damages for the landlord’s breach of the implied warranty of habitability.
The instant motion is for partial summary judgment on the fourth cause of action. CPLR 3212 (subd [e]) permits summary judgment on one cause of action within a complaint.[1] The guiding consideration behind the summary *319 judgment motion is the court’s initial determination that there are no triable issues of material fact based upon all the pleadings, documentary evidence, and affidavits presented. Under these undisputed facts, the issues, presented are whether the defendant landlord breached the implied warranty of habitability and whether the plaintiff tenants are entitled to recover for property damage under section 235-b of the Real Property Law.
A landlord’s warranty of habitability to his tenant is a contractual promise that the rented premises will be safe and habitable. The implied warranty of habitability is a recent development in American and New York law (see 1 American Law of Property [Casner ed], § 3.79; 2 Powell, Real Property, par 225, subd [2]; Humbach, Landlord Control of Tenant Behavior: An Instance of Private Environmental Legislation, 45 Fordham L Rev 223). At common law, there was no warranty of habitability implied in the landlord-tenant relationship, and the principle of caveat emptor appliéd to all contracts for the leasing of real or personal property as well as to contracts of sale (O’Brien v Capwell, 59 Barb 497; Edwards v New York & Harlem R. R. Co., 98 NY 245; Franklin v Brown, 118 NY 110). Absent fraud or a contractual obligation, the landlord neither promises that the premises are tenantable nor that he is obliged to keep the property in a safe, habitable state (Witty v Matthews, 52 NY 512; Jaffe v Harteau, 56 NY 398; Franklin v Brown, supra). The common-law doctrine of caveat lessee, which dates from the origins of English common law, was abrogated by the Appellate Division, Second Department, in Tonnetti v Penati (48 AD2d 25). Prior to the Tonnetti decision, however, the doctrine of caveat lessee was not applied by some lower courts in summary proceedings for the nonpayment of rent, and an implied warranty of habitability was found and applied.[2] In the Tonnetti opinion, Mr. Justice Shapiro wrote (p 30) : “Since ‘the law, as a living organism, does not require that the dead hand of the past perpetuate rem *320 ediable errors’ * * * we relegate to the limb of history the orthodox view of caveat lessee and hold that, unless expressly excepted, there is an implied warranty of habitability when a landlord leases premises for residential use.” That court preferred to find under the common law of real property, in the absence of statute, an implied warranty of habitability.
Tonnetti v Penati (supra) was decided on May 12, 1975, and shortly thereafter the Legislature enacted a statutory warranty of habitability which is implied into every New York residential lease (L 1975, ch 597, eff Aug. 1, 1975). The statute, section 235-b of the Real Property Law, was subsequently amended in 1976 so as to add a third subdivision (L 1976, ch 837, eff July 26, 1976). Section 235-b of the Real Property Law presently reads as follows:
“1. In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. When any such condition has been caused by the misconduct of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties.
“2. Any agreement by a lessee or tenant of a dwelling waiving or modifying his rights as set forth in this section shall be void as contrary to public policy.
“3. In determining the amount of damages sustained by a tenant as a result of a breach of the warranty set forth in this section, the court need not require any expert testimony.”
The statute was designed to codify the existing case law. It is to be given retroactive application to tenancies, such as the one at bar, which pre-exists the statute’s enactment (Committee for Preservation of Fresh Meadows v Fresh Meadows Assoc., 71 AD2d 664). The statute, however, does *321 not apply to causes of action which arose prior to its enactment on August 1, 1975 (Francais v Cusa Bros. Enterprises, 53 AD2d 24).
The warranty of habitability has usually come into issue in summary proceedings for the nonpayment of rent. In that context the tenant raises the breach of the implied warranty of habitability as a defense. This court holds that this warranty may be used affirmatively in a cause of action for property damage.[3] Governor Carey stated in his memorandum of approval that: “[T]he circumstances and situations in which tenants will be seeking to enforce the warranty will take many forms. Tenants have utilized the doctrine affirmatively as well as defensively; as a counterclaim, set-off, and defense in non-payment of rent proceedings. The remedies have been complete or partial abatement of rent and reimbursement for repairs made by tenants themselves. It will be the court’s function to fashion remedies appropriate to the facts of each case” (NY Legis Ann, 1975, p 438; emphasis supplied). The bill’s leading sponsor, Senator Barclay, wrote that “this warranty is available as a cause of action or as an affirmative defense or counter claim” (NY Legis Ann, 1975, p 315).
The leading decision on the warranty and the statute is a recent case, Park West Mgt. Corp. v Mitchell (47 NY2d 316). This is the only case in which the Court of Appeals has spoken on the statute. Chief Judge Cooke, in a scholarly opinion, traced the history of the warranty of habitability and placed it within a modern framework (p 324) : “The modern-day tenant, unlike his medieval counterpart, is primarily interested in shelter and shelter-related services. He is usually not competent to perform maintenance chores, even assuming ability to gain access to the necessary equipment and to areas within the exclusive control of the landlord * * * Since a lease is more akin to a purchase of shelter and services rather than a conveyance of an estate, the law of sales with its implied warranty of fitness (Uniform Commercial Code, § 2-314) provides a ready analogy *322 that is better suited than the outdated law of property to determine the respective obligations of landlord and tenant (Green v Superior Ct., 10 Cal 3d 616, 626-627)
In the Park West Mgt. case (supra) the warranty was used defensively by a tenant on behalf of about 400 co-tenants in a Manhattan apartment house complex. That action was a summary proceeding for the nonpayment of rent. The court found that the buildings’ maintenance and janitorial employees’ strike caused the premises to be uninhabitable and that the implied warranty of habitability was breached. The court found (p 327) that: “The scope of the warranty includes, of course, conditions caused by both latent and patent defects existing at the inception of and throughout the tenancy. However, as the statute places an unqualified obligation on the landlord to keep the premises habitable, conditions occasioned by ordinary deterioration, work stoppages by employees, acts of third parties or natural disaster are within the scope of the warranty as well * * * Inasmuch as the landlord is vested with the ultimate control and responsibility for the building, it is he who has a corresponding nondelegable and nonwaivable duty to maintain it.” Thus, under this standard it has been conclusively shown in the case at bar that the defendant landlord has breached the implied warranty of habitability and that plaintiff tenants may recover damages for such breach.
In Park West Mgt. (supra), the court granted the defendants a rent abatement. The Court of Appeals did not restrict the remedies available for the breach of the warranty to only a rent abatement, which the Park West tenants sought. The court discussed rent abatement as a remedy under the case’s particular facts and chose not to comment on the availability of other remedies in other situations, such as the instant one of property damage.
The Court of Appeals has offered the lower courts a signpost for determining liability. The court stated (p 328): “A residential lease is essentially a sale of shelter”. In comparing the renting of a residential property to a purchase of goods, it is significant that the court referred to Uniform Commercial Code. Section 2-314 of the Uniform Commer *323 cial Code provides for the implied warranties of merchantability and fitness in contracts for the sale of goods.[4]
The Court of Appeals has compared the rental of premises to a sale of shelter where sales warranties should be applicable. Breach of warranty causes of action are separate and distinct from strict liability actions (Ribley v Harsco Corp., 57 AD2d 234). Breach of implied warranty is generally treated as a form of strict liability where most of the difficult problems of proof in a negligence action are obviated (Guyot v Charyn, Inc., 69 AD2d 79, 87, citing 47 NY Jur, Products Liability, § 66).
The breach of the implied warranty of habitability had already been pleaded in cases other than summary proceedings for the nonpayment of rent before the Park West Mgt. decision (47 NY2d 316, supra) (see, e.g., Groner v Lakeview Mgt. Corp., 83 Misc 2d 932, supra). In Kaplan v Coulston (85 Misc 2d 745), a kitchen cabinet fell on the tenant, and this plaintiff commenced an action for her personal injuries. Judge David Levy compared recovery under the statute, section 235-b of the Real Property Law, to recovery under a theory of strict products liability. The court adopted the theory of strict products liability on the part of the landlord for personal injuries caused by a defect in the premises. The plaintiff would still have to prove a defect in the premises, but a strict products liability approach would eliminate the difficulty of proving negligence.
This approach has not been adopted by other courts, although many in the plaintiff’s personal injury trial bar welcome this approach (See Lipsig, Breach of Implied Warranty of Habitability in Residential Leases, NYLJ, Oct. 30, 1979, p 1, col 1). Other cases decided after Park West Mgt. have awarded tenants money damages rather than rent abatement (see Goodman v Ramirez, 100 Misc 2d 881 [damages for “disruption of daily living”]; Sargent Realty Corp. v Vizzini, 101 Misc 2d 763 [damages for flooding *324 caused by neighboring tenants] ; H & R Bernstein v Barrett, 101 Misc 2d 611 [damages for lack of water due to the acts of third parties] ; see, also, Blatt v Fishkin, 101 Misc 2d 888 [cause of action for “adverse impact on life”]; Brownstein v Edison, 425 NYS2d 773 [complaint amended to permit action for breach of the implied warranty of habitability]; cf. Concord Vil. Mgt. Co. v Rubin, 101 Misc 2d 625).
A recent Appellate Term, First Department, case is nearly on point with the action at bar. In McBride v 218 E. 70th St. Assoc. (102 Misc 2d 279), the tenant sued her landlord for property damage resulting from the latest of eight floods. The apartment was flooded with six inches of water. The plaintiff moved for summary judgment on her cause of action based on the breach of implied warranty of habitability. The Appellate Term ruled that the motion should be granted as to the issue of liability but ordered an assessment of damages. The court found that this tenant did not cause the flooding or contribute to it. There need not be a showing that the landlord acted in bad faith or contributed to the defective condition of-the premises. The court seemingly approved the reasoning of Kaplan v Coulston (85 Misc 2d 745, supra), and it cited it with approval.
Courts have sustained the use of section 235-b of the Real Property Law as both a shield in a summary proceeding for the nonpayment of rent and as a sword in a counterclaim or a plenary action. The warranty has been used in tort actions for both personal injuries (Kaplan v Coulston, supra) and property damage (McBride v 218 E. 70th St. Assoc., supra). In no case has a court refused recovery for property damage, and there is nothing in the legislative history which indicates that damages are to be limited to a rent abatement.
The Court of Appeals delineation of the scope of the warranty of habitability in Park West Mgt. (47 NY2d 316, supra) is expansive rather than restrictive. The Court of Appeals did not limit recovery to only rent abatement, and it commented that the warranty encompasses both latent and patent defects.[5] The fact the damages may not be *325 readily ascertainable will not shield a wrongdoing landlord from liability. The Governor’s memorandum of approval (NY Legis Ann, 1975, p 438) has placed the responsibility for devising remedies and procedures upon the courts.[6] Finally, the warranty of habitability has been analogized to the warranties of merchantability and fitness under the Uniform Commercial Code. After reviewing the present state and trends in the law, the court finds there was a breach of the warranty of habitability in this case.
In this case there was no question as to causation between the roof leaks, the flooding, and the resultant property damage. In treating the rental of this apartment as a sale of shelter, the premises were uninhabitable because the latent roof defects caused a flood which made the apartment uninhabitable. To establish a claim for breach of implied warranty in a product liability case, plaintiff must show that the product which he used was not reasonably fit for the purpose for which it was intended and that such product was the proximate cause of his injuries (Finkelstein v Chevron Chem. Co., 60 AD 2d 640). The criteria for breach of warranty under the products liability decisions has been satisfied in this, analogized context of breach of implied warranty of habitability (see, also, Codling v Paglia, 38 AD 2d 154, affd 32 NY2d 330). The court finds no reason, after considering the current legal trends, to disallow liability in an action founded in property damage. Since the Legislature has created a recoverable wrong, namely, the breach of the implied warranty of habitability, and since the courts may fashion remedies to fit the case, then a wrongdoing landlord is liable for the damages which flow from his wrongful act or omission.
The motion for partial summary judgment is granted on the issue of liability. The parties will appear for a hearing on the assessment of damages on September 15, 1980, in Trial Term, Part I.

. The three remaining causes of action are founded on the alleged negligence of the landlord and the roofer, Stanley Werling. The first cause of action is against the landlord for negligent maintenance of the roof. The second cause of action is against the roofer for the negligent repair of the roof, and the third cause of action is against both defendants for the negligent repairs. The fourth and final cause of action is against the landlord alone and is founded on the breach of the implied warranty of habitability.

. “The doctrine of implied warranty of habitability has been the accepted policy of many Judges of the Civil Court of the City of New York for a number of years” (Groner v Lakeview Mgt. Corp., 83 Misc 2d 932; see, e.g., Jackson v Rivera, 65 Misc 2d 468; Morbeth Realty Corp. v Velez, 73 Misc 2d 996; Steinberg v Carreras, 74 Misc 2d 32).

. After the statute’s enactment, a prominent trial lawyer suggested that this implied warranty could he used affirmatively in an action in tort (Julien, Torts, 1975 Survey of NY Law, 27 Syracuse L Rev 509, 511-512).

. Under section 2-316 of the Uniform Commercial Code such warranties may be specifically excluded or modified. Under the Real Property Law modification or exclusion of the implied warranty of habitability is void as against public policy. This provision indicates that a tenant is treated as a consumer, rather than a commercial buyer under the Uniform Comercial Code, for the purposes of the warranty of habitability.

. This would seem to support the strict liability reasoning of Kaplan v Coulston (supra) although that case was not cited in Park West Mgt. (supra).

. The statute’s silence on procedure has been criticized as likely to breed chaos in this area of law (Roberts, Property, 1975 Survey of NY Law, 27 Syracuse L Rev 387, 399).