OPINION OF THE COURT
John A. Milano, J.
In this nonpayment proceeding, tenant respondent seeks to amend her counterclaim to state a cause of action for damages for personal injuries based on strict liability for breach of the warranty of hábitability (Real Property Law, § 235-b) caused by the ingestion of lead by two of her infant sons, contained in the painted walls, ceilings and other surfaces of the tenant respondent’s apartment in a building described as a two-family private dwelling.
ISSUE
The significant issue raised in this proceeding is whether the breach of the warranty is applicable to a tort action under section 235-b of the Real Property Law, imposing strict liability upon a landlord and relieving a tenant from the burdens of proving fault, causation and notice when injured by reason of conditions and defects on the premises.
THE WARRANTY OF HABITABILITY
Chapter 597 of the Laws of 1975, effective August 1, 1975, provides as follows: “1. In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the *128 premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. When any condition has been caused by the misconduct of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties.” In a memorandum filed with the warranty bill, the Governor stated, inter alia: “Tenants have utilized the doctrine affirmatively as well as defensively; as a counterclaim, set-off and defense in non-payment of rent proceedings. The remedies have been complete or partial abatement of rent and reimbursement for repairs made by tenants themselves. It will be the courts’ function to fashion remedies appropriate to the facts of each case.” (NY Legis Ann, 1975, p 438.)
LEGISLATIVE INTENT
Senator H. Douglas Barclay, principal Senate sponsor of the warranty bill during his lengthy supporting remarks on the floor of the Senate in regard to legislative purpose stated: “The most frequently applied measure of damages is likely to be the decrease in rental value caused by the breach * * * Such abatements of rents have been applied by those courts in the state which now recognize this implied warranty *** This remedy closely parallels the rent reductions granted administratively under rent control for failure to maintain essential services * * * Courts should be able to continue to apply generalized rules-of-thumb for determining the proportionate abatement appropriate for various types of breaches without having to resort to expert testimony * * * Generally, such abatement remains in effect for a relatively short time * * * Until the landlord repairs the breach or until the tenant vacates”. (Senate, 3d Reading, June 17, 1975, pp 7771-7772.) And among his other supporting remarks, Senator Barclay stated: “In return for the rent received, the landlord will warrant that the premises are habitable. It is a very simple concept, the contractual relationship between the two parties will be changed to put the tenant in parity *129 legally with the landlord” (p 7766). “We’ve avoided the word ‘negligence’ because this is a contractual matter rather than a question of tort law” (p 7774).
It is thus apparent that the legislative purpose and intent of section 235-b of the Real Property Law was to make the landlord legally liable to the tenant for monetary damages for failure to properly maintain the premises, make repairs and provide necessary services. The statutorily imposed convenant codified the common-law “implied warranty of habitability” recognized by the Second Department of the Appellate Division in Tonetti v Penati (48 AD2d 25). It created a significant statutory change in landlord and tenant relations by recognizing that rent payment is for a variety of housing services as well as a proper physical facility.
CASE LAW
In Kaplan v Coulston (85 Misc 2d 745) the tenant was injured when a kitchen cabinet fell and struck her. In granting a motion to amend the complaint in order to add a cause of action for strict liability, the court reasoned that it best served the interests of justice. The court asked (p 748), “Is a cause of action in negligence, requiring actual or constructive notice to the landlord, the answer, or is strict liability a theory of liability whose time has come? * * * History, nevertheless, does not provide us with the answer, as there is nothing in the history of the law of leases, of tort law or products liability that necessitates imposing a rule of strict liability upon a landlord.” (Emphasis supplied.) The court went on to state that militating against strict liability were several persuasive arguments, among which were that q lease is not a sale of a product. Further, that the notice requirement is based upon the idea that the tenant and not the landlord has possession and control of the apartment and therefore the tenant should be required to notify the landlord so that the landlord may take corrective action. And in the State of New Jersey, in the case of Dwyer v Skyline Apts. (123 NJ Super 48, affd 63 NJ 577), the State’s highest court declined to impose strict liability holding that it would be an unjust burden to impose or apply it to landlords as opposed to the application of strict *130 liability to the manufacturer or seller of products. And since section 235-b of the Real Property Law does not expressly address the tort liability to which a landlord’s statutory duty to repair gives rise, should legislative silence be treated as a mandate to the courts to expand section 235-b into a statute of strict liability? It is significant tp point out that in regard to landlord and tenant, tort liability arising out of a landlord’s duty to repair under the Multiple Dwelling Law and the Housing Maintenance Code applicable to the said premises and whose statutory provisions pre-existed section 235-b, cases decided prior to the Kaplan decision (supra) have held that the duty of the landlord to keep the leased premises in good repair does not impose liability without fault, and in this regard the courts have refused to treat the landlord as an insurer of the tenant’s safety. (Ellis v Di Chiara, 38 AD2d 780; Stoliker v Crandall, 25 NY2d 991; Altz v Leiberson, 233 NY 16.) Similarly, the elements constituting negligence actionable at common law remain an integral part of the cause of action in tort for violation of section 78 of the Multiple Dwelling Law. (Becker v Manufacturers Trust Co., 262 App Div 525; Costagliola v Home Owners’ Loan Corp. 35 F Supp 930; Benjamin v Kimble; 43 Misc 2d 497; Pagan v Goldberger, 51 AD2d 508; Rodriguez v Levin, 36 Misc 2d 239; and see Zarlin Realty Co. v Napolitano, NYLJ, April 27, 1977, p 11, col 3 [Milano, J.].) In that case, the court stated, inter alia (p 11, col 6), “Section 235b was a section added to the RPL, But section 78 of the MDL was never repealed, modified or changed by the legislature when 235b was enacted. Section 78 remains intact and so do the precedents upholding the requirement of notice.” (Emphasis supplied.)
The landlord is not required to make the premises absolutely safe for use, rather the test to be applied is whether the premises are reasonably safe for use intended. The Court of Appeals has held that under section 78 of the Multiple Dwelling Law the landlord is not liable for accidents that are unforeseeable and that in order to establish a prima facie case in negligence, notice of defect must be shown. (Collins v Noss, 258 App Div 101, affd 283 NY 595.)
*131 And where a statute is silent with respect to an issue or admits several interpretations, as section 235-b does with respect to tort liability, an interpretation most nearly conforming to the common-law rules should be adopted by the courts. (People v Phyfe, 136 NY 554; Matter of Fischer, 261 App Div 252.)
It is clear, therefore, that in regard to statutes and codes imposing a duty and standard of repair and maintenance, that the courts have applied a negligence theory with the landlord’s breach of the statute being some evidence of negligence. (Stoliker v Crandall, supra; Collins v Noss, supra.) And liability is conditioned upon a showing that the landlord had notice of the defect and a reasonable time to repair. (Century Ind. Co. v Arnold, 153 F2d 531, cert den 328 US 854; Batton v Elghanayan, 43 NY2d 898; Altz v Leiberson, supra.)
And “remedies” to be utilized and fashioned by the courts should not be construed to be “causes of action” such as an action in “torts” where the remedy may be money damages for property damage or personal injuries. (Cf. McGuiness v Jakubiak, 106 Misc 2d 317 [Bernstein, J.].) Senator Barclay, in his supporting remarks to the Senate addressed himself to this question by stating: “We wish to leave the greatest degree of flexibility to the courts to fashion an appropriate remédy in each case. Since we’re treating a lease or rental agreement for residential premises as a contract, the full range of remedies in contract law could be considered by the court. These include damages, specific performance and rescission. The most frequently applied measure of damages is likely to be the decrease in rental value caused by the breach” (p 7771).
And in a law review article by Margaret R. Scherer, entitled New York’s Search for an Effective Implied Warranty of Habitability in Residential Leases (43 Albany L Rev 661, 686), Ms. Scherer states: “In light of the rule that statutes enlarging or limiting common law rights or liabilities should be construed as consistent with existing common law principles unless the intention to overrule such case law plainly appears by express legislative declaration or necessary implication, Kaplan should be overruled as an *132 unwarranted extension of section 235-b and the implied warranty of Tonetti.”
CONCLUSION
It is apparent that the weight of legislative intent and case law precedents is clearly against the application of a strict liability doctrine to section 235-b of the Real Property Law, which would eliminate the requirement of notice in personal injury actions. In any event, the imposition of a doctrine of strict liability should not be achieved by any form of judicial legislation for it is clearly the Legislature’s duty to expressly spell out a strict liability law if such was its intention.
Accordingly, and for all of the above-stated reasons, the application of the tenant to amend her counterclaim to include a cause of action for damages for personal injuries based on strict liability for breach of the warranty of habitability is denied in all respects.