OPINION OF THE COURT
Thomas A. Dickerson, J.
Tried separately these two cases have been consolidated for disposition.
In Spatz v Axelrod Mgt. Co. (the Spatz case) plaintiff is a tenant, pursuant to a lease, in apartment 5G in a building located at 5570 Nether land Avenue, Bronx, New York, of which the defendant is the landlord.
*761 On February 2, 1995 a large quantity of water poured through the ceilings and light fixtures in plaintiffs apartment causing severe water damage to a carpet, a bed and some clothing. As a consequence, the plaintiff (1) had water extracted from his carpet, (2) had his clothing cleaned and (3) bought a new bed and box springs. The source of the water was from a flush pipe which had become detached from the toilet in apartment 6G directly above plaintiffs apartment 5G. Defendant, eventually, stopped the flood and fixed the gushing toilet installing a new "spud” and flush pipe.
In response to his claim for damages the defendant declined and invited plaintiff to sue. At trial, the defendant stated (1) that it had received no prior notice of any problems with the spud and flush pipe in apartment 6G, (2) that what caused the flush pipe to become detached from the toilet was "a mystery” and (3) that paragraph "10” of the lease relieved it of any liability for water damage to plaintiffs apartment: "Landlord * * * shall not be liable for any * * * damages to * * * property resulting from falling * * * water * * * which may leak from any part of said building or from the pipes, appliances or plumbing works * * * unless caused by or due to the negligence of Landlord * * * nor shall Landlord * * * be liable for any such damage caused by other tenants”.
In McIntyre v Axelrod Mgt. Co. (the McIntyre case) the plaintiff is a tenant, pursuant to a lease, in apartment 4G, directly below apartment 5G in which Mr. Spatz is a tenant.
On February 2, 1995, after Mr. Spatz’s apartment was soaked, some 30 gallons of rusty water descended into Mr. McIntyre’s apartment causing severe water damage to the ceiling, a carpet, a bed, and clothing. As a consequence, the plaintiff purchased a new carpet, a new bed and box springs, repainted the ceilings and had his clothes cleaned.
In response to plaintiffs claim for damages the defendant also invited Mr. McIntyre to sue. At trial, the defendant stated that (1) it had received no prior notice of flush pipe problems in apartment 6G and (2) that the cause was still "a mystery” and may very well have been an Act of God for which it could not be held responsible. Unlike the lease in the Spatz case, the Mclntrye lease contains no clause absolving defendant of liability for water damage to plaintiffs apartment.
DISCUSSION
In these two cases the plaintiffs seek to recover monies expended in repairing the ceilings of their apartments and/or *762 replacing and repairing their personal property (carpets, bedding and clothing), all of which suffered water damage. In these two cases the water came from a pipe connected to a toilet in an apartment above the plaintiffs. There is no evidence that the plaintiffs were in any way responsible for the malfunctioning toilet, flush pipe and spud which caused the damages they sustained. In each case the defendant has denied liability. In the Spatz case the defendant relies upon language in a lease to insulate itself from liability while in the McIntyre case the defendant relies upon an unforeseeable Act of God.
Based upon a review of the facts in these cases the court finds that plaintiffs have asserted a cause of action based upon the breach of an implied warranty of habitability pursuant to Real Property Law § 235-b.

Water Damage Cases

Water damage caused by leaking ceilings and roofs has been the subject of considerable litigation between tenants and landlords (see, e.g., Walling v Holman, 858 F2d 79 [2d Cir 1988], cert denied 489 US 1082 [1989] [water damage to tenant’s parquet floor is recoverable under Real Property Law § 235-b]; Frisch v Bellmarc Mgt., 190 AD2d 383 [1993] [roof leaks]; Couri v Westchester Country Club, 186 AD2d 712 [1992] [constant water damage]; Ameri v Young Skincare Ctr., 170 AD2d 280 [1991] [tenant clothing store awarded $187,639 for water damage to merchandise]; Halkedis v Two E. End Ave. Apt. Corp., 161 AD2d 281 [1990] [leaking roof; tenant fails to prove damages]; Minjak Co. v Randolph, 140 AD2d 245 [1988] [tenants who suffered 40 separate leaks from health spa on floor above awarded rent abatement, attorneys’ fees of $5,000 and punitive damages of $5,000]; Vanderhoff v Cosier, 91 AD2d 49 [1983] [faulty plumbing]; Kachian v Aronson, 123 Misc 2d 743 [1984] [water damage; rent abatement awarded]; McGuinness v Jakubiak, 106 Misc 2d 317 [1980] [flooding during rainstorm dumps six inches of water onto apartment floors]; McBride v 218 E. 70th St. Assocs., 102 Misc 2d 279 [1979] [tenants suffered damages from eight separate floods]; Blatt v Fishkin, 101 Misc 2d 888 [1979] [roof leaks have an "adverse impact on * * * life”]; Sargent Realty Corp. v Vizzini, 101 Misc 2d 763 [1979] [upstairs tenants cause four floods; rent abatement awarded]; Goodman v Ramirez, 100 Misc 2d *763 881 [1979] [leaky toilets; tenants awarded $400 for " 'disruption of daily living’ ”]).

The Need For Strict Liability

In these two cases water emanating from a defective pipe suffering, presumably, from metal fatigue or other mechanical problems caused flooding and severe damage to plaintiffs’ apartments and personal property. It is difficult to imagine under what modern theory the plaintiffs should be forced to bear the burden of losses arising from metal fatigue in pipes, toilets and radiators. Defendant’s excuse for inaction, i.e., that it was not informed of any prior problems, is unacceptable. Certainly, as between the tenant and the landlord the latter is in a better position to monitor and test the building’s plumbing and replace worn out pipes before they cause severe water damage.
It is reasonable to shift the burden of persuasion to the landlord to come forward and demonstrate that it was not negligent in failing to monitor and test for metal fatigue and other problems which result in flooding (see, e.g., Codling v Paglia, 32 NY2d 330, 340 [1973] ["Advances in the technologies of materials, of processes, of operational means have put it almost entirely out of the reach of the consumer to comprehend why or how the article operates, and thus even farther out of his reach to detect when there may be a defect or danger present in its design * * * In today’s world, it is often only the manufacturer who can fairly be said to know and to understand when an article is suitably designed * * * made for its intended purpose.”]).

Real Property Law § 235-b

Real Property Law § 235-b created a statutorily mandated warranty of habitability in every residential lease (Real Property Law § 235-b [1] ["covenant and warrant that the premises so * * * rented and all areas used * * * in common * * * are fit for human habitation * * * and that the occupant * * * shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety”]) which cannot be waived by the tenant (Real Property Law § 235-b [2]).
This extraordinary statute applies to both tenants and the owners of cooperative apartments (see, e.g., Suarez v Rivercross Tenants’ Corp., 107 Misc 2d 135 [1991]) but not to condomin *764 ium owners (see, e.g., Frisch v Bellmarc Mgt., supra) and can be used affirmatively as herein (see, e.g., McGuinness v Jakubiak, 106 Misc 2d 317, 321 [1980], supra ["this warranty may be used affirmatively in a cause of action for property damage”]) or as a defense in landlord’s action seeking unpaid rent (see, e.g., Kachian v Aronson, 123 Misc 2d 743 [1984], supra [15% rent abatement]).
Real Property Law § 235-b has provided consumers with a powerful weapon to encourage landlords to maintain apartments in a decent, livable condition. This was made clear by the Court of Appeals in Park W. Mgt. Corp. v Mitchell (47 NY2d 317, 324-325 [1979]): "Since a lease is more akin to a purchase of shelter and services * * * the law of sales, with its implied warranty of fitness * * * provides a ready analogy that is better suited than the outdated law of property to determine the respective obligations of landlord and tenant * * * until development of the warranty of habitability * * * the contemporary tenant possessed few private remedies and little real power, under either the common law or modern housing codes, to compel his landlord to make necessary repairs or provide essential services * * * A residential lease is now effectively deemed a sale of shelter and services.”

Defendant Is Liable For Plaintiffs’ Damages

It was the responsibility of the defendant landlord to provide habitable living environments for the plaintiffs and it failed to do so. The defendant has breached its warranty of habitability pursuant to Real Property Law § 235-b and is liable for all appropriate damages thereunder (see, e.g, Walling v Holman, supra, 858 F2d, at 83 ["(Real Property Law § 235-b) appears to cover — at a minimum — the water damage to the floors caused by a leaky roof’]; Suarez v Rivercross Tenants’ Corp., 107 Misc 2d 135, 140, supra ["The test is whether or not the defects 'deprived the tenant of those essential functions which a residence is expected to provide’ as viewed by the eyes of a reasonable person”]; McBride v 218 E. 70th St. Assocs., 102 Misc 2d 279, supra [landlord’s good faith or lack of knowledge of defects irrelevant to liability]; Ameri v Young Skincare Ctr., supra [water damage is a breach of warranty]; Minjak Co. v Randolph, supra [water damage is breach of warranty]; McGuinness v Jakubiak, supra [six inches of water on floors is a breach of warranty; no notice of prior leaks]; Kachian v Aronson, 123 Misc 2d 743, 747, supra ["(ten *765 ants) entitled to be free from having water leak into their units and are entitled to a warranty of habitability abatement therefor”]).
 To the extent that defendant in the Spatz case relies upon language in its lease to modify or eliminate its obligations under Real Property Law § 235-b such reliance is ill founded. Boilerplate exculpatory language appearing in the lease ("Landlord * * * shall not be liable for any damages to * * * property resulting from falling * * * water * * * [in absence of negligence]”) is null and void as contrary to the public policy set forth in Real Property Law § 235-b (2) ("Any agreement by a * * * tenant of a dwelling waiving or modifying his rights [herein] * * * shall be void as contrary to public policy”). The reliance of defendant in the McIntyre case upon the common-law doctrine of Act of God is equally ill founded. Common-law doctrines of this nature are, clearly, preempted by the statutorily imposed obligations set forth in Real Property Law § 235-b (see, e.g., Park W. Mgt. Corp. v Mitchell, supra, 47 NY2d, at 324-325). Defendant’s remaining assertions that it needed notice of a defect to be liable (see, e.g., Vanderhoff v Cosier, supra, 91 AD2d, at 51 ["Compelling the tenants to first supply written notice critically circumscribes their ability to assert important rights which the Legislature intended them to have * * * Indeed any such requirement would render the tenant’s ability to bring suit for breach of the habitability warranty ephemeral”]) or that some other tenant was responsible for the plaintiffs water damage (see, e.g., Sargent Realty Corp. v Vizzini, 101 Misc 2d 763, 765, supra ["responsibility for maintaining the premises in a safe habitable condition (is) on the landlord, even where the unsafe condition may have been brought about by the acts of third parties”]) are equally without merit.
DAMAGES
This court finds the defendant liable to the plaintiffs for its breach of the warranty of habitability as set forth in Real Property Law § 235-b. The court awards plaintiffs the following damages.
First, the plaintiffs in each case shall recover the costs of replacing or repairing damaged ceilings, carpets, bedding and clothing which are $791.37 for Spatz and $1,567.76 for McIntyre (see, Walling v Holman, supra, 858 F2d, at 83; Ameri v Young Skincare Ctr., 170 AD2d 280, supra; McGuinness v *766 Jakubiak, 106 Misc 2d 317, supra; Martin v Caputo, NYLJ, May 10, 1995, at 33, col 3 [recoverable damages under Real Property Law § 235-b include loss of personal property]); second, the plaintiffs in each case shall also recover $400 for their discomfort and the disruption to their lives caused by the flooding (see, e.g., Goodman v Ramirez, 100 Misc 2d 881, supra; Blatt v Fishkin, 101 Misc 2d 888, supra).
[Portions of opinion omitted for purposes of publication.]