■ ABRAHAM KAUFMAN et al., Respondents, v. JOSEPH GORDON et al., Jointly and Individually and as Copartners Doing Business as GORDON, TOBIN AND WELSON, Appellants.— Judgment affirmed, on the law and on the facts, with costs to the respondents. In connection with the sale of stock — which was essentially a sale of land being developed — the defendant warranted "that [the] sewers had been fully paid for." The breach of that warranty was fully established. The sewers had not been paid for. The sewer assessments which became a lien on the land in consequence thereof aggregated the sum of $163,415. The principal question to be decided is that of the amount of damage which the plaintiff is entitled to recover as the result of that breach. If this property had been warranted to be free and clear and if it were found to be encumbered by a mortgage, we would readily say that the plaintiff would be entitled to recover from the defendant the amount of that encumbrance, or at least its market value. Whether it retained the property or sold it it would be entitled to recover such sum. Nor does it make any difference if the property were subsequently sold at a profit. The purchaser would be entitled to receive what it paid for. I see no reason for a different measure of damages to be applied here. The assessment reflected the cost of the sewer installation. It was fixed in amount and it became an encumbrance on the property in such an amount. Nor is the relation of the amount of damages to the purchase price of any materiality. It is common knowledge that development costs of unimproved property very often equal and at times exceed the value of the land as undeveloped. However, that is quite immaterial because the agreed price reflected what the purchaser was willing to pay for the property with the sewers fully paid for. The plaintiff, however, has offered additional evidence, accepted by the court, whereby the loss could be established by other standards. For example, he proved that after the disclosure of the fact that the sewers had not been paid for there were refunds made by the defendants to prior purchasers in the same development to the extent of $500 per lot. Likewise, it was proved by a representative of the Veterans' Administration that the Veterans' Administration's appraisal of each lot was diminished by the sum of $500 as a direct result of the unpaid sewer assessment. Furthermore, there was proof that the allocated cost of the installation of the sewers amounted to $805 per lot. There is, therefore, ample evidence in the record to establish a finding of a minimum loss of $119,375.23 resulting from the unpaid sewers and the other items of damage as reflected in the judgment of the court. The court could very well have found the loss to be the full amount of the sewer assessment. However, it chose to find a lesser amount based upon the alternative evidence of damage offered. If anything the defendants were benefited thereby. The plaintiff is entitled to what it contracted for and any profit which it made as the result of its operations should not inure to the benefit of the defendants who breached the contract. Concur — Botein, P. J., Rabin and McNally, JJ.; Valente and Eager, JJ., dissent in the following memorandum: We dissent. The plaintiffs did establish a clear case entitling them to recover for breaches of warranties, but the record here is

insufficient to support the damages awarded by the learned trial court and, therefore, the judgment appealed from should be reversed and a new trial ordered. The sale was a sale by defendants of all the shares of stock in a realty development corporation, which owned a tract of land subdivided into 203 building lots and developed with roads and utilities. In connection with the sale, the defendants represented and agreed in writing that sewers had been fully installed so as to enable each of the lots to be connected with a sewage system, excepting seven lots described by number; that said sewers had been fully paid for; and that there were no unpaid assessments whatsoever against the premises. Within three months after the closing of the sale, the plaintiffs discovered that the sewer installations were not paid for and that the local Sewer District had assessed each of the lots the sum of $805 on account thereof, or a total assessment of the 203 lots of $163,415. Also involved was an alleged warranty that the lots were suitable to build upon, and it was alleged and proven by the plaintiffs that there was a breach of such warranty as to three of the lots in that they had been dedicated for park purposes. The plaintiffs brought this action to recover for breach of the warranty with respect to the three lots unavailable for building purposes, and to recover damages on account of the breach of the warranties that sewer installations were fully paid for and that sewer assessments were paid. The learned Trial Justice, readily reaching a conclusion that the plaintiffs were entitled to recover, aptly said, " The question of damages may not be so clear." He concluded that this was not a case for the application of subdivision 7 of section 150 of the Personal Property Law, prescribing damages in cases of breach of warranty of quality. He held that plaintiffs' damages should be measured pursuant to subdivision 6 of section 150 of the Personal Property Law, providing that " The measure of damages for breach of warranty is the loss directly and naturally resulting in the ordinary course of events from the breach of warranty." In fixing the amount of damages to be awarded for breach of the warranties that sewer installations were fully paid for and that sewer assessments were paid, the trial court found that the plaintiffs had sold 200 building lots with houses to be constructed thereon and that " plaintiffs suffered a loss of $500 profit on each sale." The conclusion was that the plaintiffs sustained damages of $100,000 computed at the rate of $500 on a total of 200 lots. Such conclusion however does not have support in the record. (Incidentally, it appears that only 198 lots were sold with houses thereon, and that the warranties with respect to the sewer assessment did not apply to three of such lots.) In any event, the proof on the part of plaintiffs was merely to the effect that, on account of the failure of the defendants to have paid for sewer installations as warranted, the plaintiffs sustained a loss of $500 on many of the lots which were sold to veterans. Such proof was of course only effective to prove the loss on the limited number of lots which were sold to veterans, and the trial court specifically found that " plaintiffs did not prove that they sold all the lots and houses thereon to veterans, or the exact amount of their loss ". There is no proof in the record as to the number of houses sold to veterans on which plaintiffs took a loss of $500. Award of $500 on each of 200 lots, as the loss sustained by plaintiffs, was not properly supported by the indefinite testimony on the part of the chief appraiser for the Veterans' Administration that he estimated in a general way the cost of the construction of sewer pipes and outlets for a 75-foot house and lot at approximately the sum of $500. Nor is the particular award supported by the conclusion of the trial court that " It is only fair to assume that competition in the market required the pricing of all houses on the same basis as prices to veterans." The plaintiffs had the burden of proving a proper basis for ascertaining the damages sus-

tained by reason of breach of the alleged warranties. "'Damages are recoverable for losses caused * * * by the breach [of contract] only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty' (American Law Institute, Restatement of the Law of Contracts, § 331), and the plaintiff has always the burden of producing evidence sufficient to form a basis for the estimate." (*Haughey* v. *Belmont Quadrangle Drilling Corp.*, 284 N. Y. 136, 142.) Damages awarded by a trial court must find support in the evidence. An award may not stand where it rests upon mere conjecture or guesswork. (*Dunkell* v. *McDonald*, 272 App. Div. 267, affd. 298 N. Y. 586; *Walter Janvier, Inc.* v. *Baker*, 229 App. Div. 679, 680.) It should not have been necessary for the trial court to assume that the plaintiffs sustained a loss of $500 on each lot because "competition in the market required the pricing of all houses on the same basis as prices to veterans". In adopting the speculative and untenable basis of $500 per lot as the measure of damages, the trial court not only predicated its conclusion on a standard unsupported by a proper evidentiary foundation, but reached a result which in monetary terms is on its face wholly disproportionate to the consideration for the entire contract. Plaintiffs are clearly entitled to be compensated for any and all loss sustained, but a misrepresentation or breach of warranty may not be used as a fulcrum for an unexpected profit. This does not appear to have been a case where there should have been any difficulty in establishing plaintiffs' *actual* loss, or presenting proof whereby the same could be reasonably approximated. Under the circumstances, there should be a remand for a new trial for proper proof of "the loss directly and naturally resulting in the ordinary course of events from the breach of warranty".