OCEAN ROCK ASSOCIATES, Appellant, v ALFRED CRUZ et al., Respondents.—In a summary proceeding to recover possession of real property, the landlord appeals (by permission) from an order of the Appellate Term of the Supreme Court for the Ninth and Tenth Judicial Districts, dated November 14, 1977, which affirmed a judgment of the First District Court, Nassau County, entered January 27, 1977, which, after a nonjury trial, dismissed the petition. Order affirmed, with costs. There was sufficient evidence to sustain the trial court's determination that the appellant landlord had breached the implied warranty of habitability. The Appellate Term, citing *Covington v McKeiver* (88 Misc 2d 1000), correctly held that upon the tenants' establishing the landlord's grievous and substantial breach of warranty, the entire rent demanded "abated". We find no merit to appellant's contention that since section 755 of the Real Property Actions and Proceedings Law does not apply, the tenants should have been compelled to deposit the rent into court. The appellant argues that if the tenants had been denied vital services, constructive eviction resulted and thus the tenants' sole resort was to vacate the apartment. By virtue of section 235-b of the Real Property Law (L 1975, ch 597, § 1), a tenant is no longer confined to the dubious remedy of vacating his apartment. That statute confirmed and codified the implied warranty of habitability which, if breached, provides an alternative remedy or complete defense to the tenant. In *Park West Mgt. Corp. v Mitchell* (62 AD2d 291), the Appellate Division, First Judicial Department, for the first time had to "interpret and apply" section 235-b. After noting the comments by the statute's sponsor, Senator Barclay, that court, in referring to the rationale justifying the legislative intent, stated (p 295): "The decisions referred to in his statement reflected the increasing judgment of courts concerned with landlord-tenant proceedings that rules developed in an earlier era did not yield sensible or just results when applied to the realities of contemporary apartment living, and that the right of the landlord to receive rent (obviously of critical importance) had somehow become separated from and given preference to the right of tenants to live in apartments maintained decently and in accordance with requirements of law. (See, e.g., *Amanuensis, Ltd. v Brown,* 65 Misc 2d 15; *Morbeth Realty Corp. v Rosenshine,* 67 Misc 2d 325; *Mannie Joseph, Inc. v*

*Stewart,* 71 Misc 2d 160; *Tonetti v Penati,* 48 AD2d 25; *57 E. 54 Realty Corp. v Gay Nineties Realty Corp.,* 71 Misc 2d 353. See, also *Javins v First Nat. Realty Corp.,* 427 F2d 1071; *Marini v Ireland,* 56 NJ 130; *Pines v Perssion,* 14 Wis 2d 590.)" Here, the deprivations were so substantial—the trial court characterized them as "appalling"—as to result in an abatement of the rent *in toto.* (We note that subdivision 3 of section 235-b of the Real Property Law provides that the tenant need not prove his damages by expert testimony.) Hopkins, J. P., Damiani and Hawkins, JJ., concur.

Martuscello, J., dissents and votes to reverse the order and the judgment and remand the proceeding to the District Court for further proceedings, with the following memorandum, in which Latham, J., concurs: This is a summary proceeding to evict the respondent tenants and to recover rent due and owing to the landlord. The tenants appeared *pro se* before the District Court. The landlord asserted that although they had been residing in their apartment, the tenants had not paid the rent for the month of January, 1977 (the landlord originally claimed unpaid rent for December, 1976 as well, but such rent was paid by the tenants after the commencement of the summary proceeding). In defense, the tenants claimed that the landlord had breached the implied warranty of habitability imposed by section 235-b of the Real Property Law. They contended that they had suffered a dripping kitchen faucet, a leaking bathroom sink, a toilet which ran continuously and a tear in the vestibule carpet outside their apartment for some six or seven months, and that there had been a lack of heat from the end of December through the date of the court appearance herein (Jan. 18, 1977). As to these items, it appeared that notwithstanding the leaks, the facilities were usable, that the torn carpet complained of was outside the apartment, and that, although the landlord admitted a breakdown in the boiler, the temperature in the apartment varied between 50 and 66 degrees; it was claimed that the temperature in the apartment had not gone above 66 degrees since January 1, 1977. Some of the plumbing repairs were effected after the commencement of this proceeding. On this record, the District Court found that the conditions in the apartment were "appalling" and granted a complete abatement of rent for the month of January, 1977. The District Court's evaluation of the situation is not supported by the record on appeal. It is my opinion that while the tenants may be entitled to a reduction in their January, 1977 rent, they did not establish that they are entitled to a complete abatement thereof; nor have they offered any proof from which a proper abatement can be determined. This case is similar to *Goldner v Doknovitch* (88 Misc 2d 88), which involved summary proceedings in which the Appellate Term, First Judicial Department, reversed a judgment awarding the tenants set off allowances against their unpaid rent and remanded the proceedings for a re-evaluation of such abatements, stating (pp 90-91): "Appellant is on firmer ground on the subject of damages. Tenants fixed no sum in their answers as the amount they claimed as a setoff against the rent due; and no such sum was fixed by them during the trial. There was no testimony by tenants, or by any witness, professional or otherwise, as to the reduced rental value of their apartments from the deprivation of services *(Steinberg v Carreras,* 77 Misc 2d 774, *supra; Levine v Ehrenberg,* NYLJ, June 11, 1973, p 18, col 2, *supra).* There was no proof of the amount paid to the employees on strike before they went on strike, or of the total rental roll of the building, or of the allocate part of the amount theretofore paid the striking employees applicable to the tenants before the court. There was no evidence of monetary damage suffered by either tenant as a result of the strike (see, for instance, *Academy Spires v Brown,* 111 NJ

Super 477). There was no evidence of the time spent by either tenant in substituting for the striking employees and the value of these services. Where it can reasonably be expected that evidence can be furnished from which reasonable men can derive substantial data for fixing the amount of damages, such evidence must be produced (York, Implied Warranty of Habitability, NYLJ, May 12, 1976, pp 1, 6, citing McCormick, Damages, § 26). Absent some reasonable basis for determining the damages sustained by the tenants, only nominal damages may be granted them *(Randall-Smith v 43rd St. Estates Corp.,* 17 NY2d 99, 106; *Finley v Atlantic Transp. Co.,* 220 NY 249; *American Electronics v Neptune Meter Co.,* 33 AD2d 157). 'Mere temporary inconveniences and annoyances to the tenant by an act of the landlord do not ordinarily constitute a breach of the covenant' of quiet enjoyment (33 NY Jur, Landlord & Tenant, § 162, p 501). Nor may damages be ascertained by mere conjecture or guess work. *(Broadway Photoplay Co. v World Film Corp.,* 225 NY 104, 109; *Dunkel v McDonald,* 272 App Div 267, affd 298 NY 586). Tenants are not required to pay for services they did not receive. The resultant loss to tenants may be measured by the reduction in rental value of their apartments, or by actual monetary damage suffered by them, or by some other practical means to determine the damage to tenants just to both parties, or by some combination of these elements of damage (see *Kaufman v Gordon,* 24 Misc 2d 240, affd 12 AD2d 586, affd 10 NY2d 769; *Dunkel v McDonald, supra).* The allowances granted tenants by the Hearing Officer do not meet these criteria, are without support in the record, and are speculative *(Strough v Conley,* 257 App Div 1057, affd 283 NY 531; *Skrine v Staiman,* 30 AD2d 707, affd 23 NY2d 946)." The standards set forth in *Goldner* should be applied herein in determining, upon the rehearing, the proper amount of rent abatement to be allowed to the tenants (see, also, *Covington v McKeiver,* 88 Misc 2d 1000; *Steinberg v Carreras,* 77 Misc 2d 774; *Whitehouse Estates v Thomson,* 87 Misc 2d 813; *Groner v Lakeview Mgt. Corp.,* 83 Misc 2d 932).