| |
|---|
| **KRCM Realty Co. Inc. v Ahmad** |
| 2025 NY Slip Op 33190(U) |
| September 9, 2025 |
| Civil Court of the City of New York, Queens County |
| Docket Number: Index No. L&T 58178-20 |
| Judge: Logan J. Schiff |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS: HOUSING PART F
-----------------------------------------------------------------X
KRCM REALTY CO. INC.

                              Petitioner,          Index No. L&T 58178-20

        -against-

                                      **DECISION AND ORDER**

NAZZAR AHMAD and IRAM NOSHEEN          **AFTER CONTEMPT HEARING**

                                     **ON DEFAULT**

                          Respondents.
-----------------------------------------------------------------X

Present:      Hon. <u>Logan J. Schiff</u>
               Judge, Housing Court

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner KRCM Realty Co. Inc. commenced the instant nonpayment proceeding on September 17, 2020, seeking possession based on Respondents Nazzar Ahmad's and Iram Nosheen's alleged default in payment of $23,344.62 in rent pursuant to a rent-stabilized lease for the subject premises, 88-12 197th Street, Apt. 2C, Hollis, New York 11423. Prior to commencement, Petitioner served a 14-day rent demand signed by Karan Singh as "president" of KRCM Realty Co, Inc., the registered owner of the subject, 31-unit building in Queens.[1]

Respondent, through counsel, interposed an amended answer on September 13, 2023 (NYSCEF 25), alleging, inter alia, violations of the statutory warranty of habitability (RPL §235[b]) for a range of housing quality conditions, including infestations of mice, rats, cockroaches and other insects, mold, water damage, and peeling paint throughout the apartment

---

[1] According to the Property Owner Registration Information on the HPD website, of which this court takes judicial notice, Karan Singh is the registered managing agent of the premises, and Rajmattie Persaud, who Petitioner's counsel indicated to this court is his spouse, is the Head Officer. The shared registered mailing address for Mr. Singh, Ms. Persaud, and Petitioner is: 45 Jackson Street, Office, Hempstead, 11550.

1

[* 1]

(NYSCEF 25).

On October 17, 2023, pursuant to CPLR 409(b), Judge Vijay Kitson issued an order to correct the 17 open Housing Maintenance Code violations in the subject unit issued by the Department of Housing Preservation and Development (HPD), including several Class C, immediately hazardous violations for mice and roaches (NYSCEF 26). The order directed Respondent to provide access on October 24, 25, and 26, 2023 and for Petitioner to remediate all Class C violations within 30 days.

Pursuant to a so-ordered, two-attorney stipulation dated February 6, 2024, Respondent Iram Nosheen (hereinafter Respondent) agreed to pay $32,000 in rent owed through January 2025, by May 6, 2024, in settlement of all rental claims, and Petitioner agreed to inspect and repair within thirty days the infestations of mice and cockroaches throughout the unit (NYSCEF 40). The agreement provided that in the event of noncompliance, either party could restore to the calendar by motion for any appropriate relief.

By order to show cause dated May 21, 2024, Respondent moved for a finding of civil contempt against Petitioner pursuant to Judiciary Law § 753 for failing to comply with the court order dated October 17, 2023, and the so-ordered stipulation dated February 6, 2024, (NYSCEF 47). The motion was supported by an affidavit from Respondent, in which she alleged that in January 2024, Petitioner belatedly completed most of the repairs in the unit but had failed to adequately address the roach and mouse infestations despite sending an exterminator to spray ineffectual poison (NYSCF 45).

In opposition to the motion, Mr. Singh submitted an affidavit in his capacity as managing agent for Petitioner, alleging that an exterminator had visited the subject apartment and corrected all alleged conditions (NYSCEF 51).

2

On July 18, 2024, Judge Kitson issued an order, following a court conference, holding that Respondent had tendered in open court sufficient funds to result in a zero balance through July 2024, and granting Respondent's motion to the extent of restoring the proceeding to the court's calendar for September 4, 2024, to determine if, following a court-ordered HPD reinspection, the alleged conditions in the apartment had been corrected (NYSCEF 57).

Following the HPD inspection on August 14, 2024, all the prior open violations remained open and numerous, additional, Class C violations were issued for infestations of mice and roaches, as well as a violation for a water leak in the bathroom, including 10 immediately hazardous, Class C Violations. As a result, Judge Kitson issued a second order to correct dated September 4, 2024, pursuant to Civil Court Act 110(c), directing Petitioner to promptly correct all violations in the timeframes required by law, and adjourned the proceeding to October 21, 2024, to determine whether to schedule a contempt hearing, with an HPD re-reinspection scheduled for October 4, 2024 (NYSCEF 61).

On October 21, 2024, the parties entered a new court-ordered, two-attorney stipulation of settlement, acknowledging that Respondent owed no rent and providing that Respondent would be afforded a rent credit of $4,689.59. Petitioner further agreed it would, within 30 days of the agreement, repair any holes in the walls or floors of the apartment exacerbating the infestations in the unit, correct the leaking sink in the kitchen, abate the infestations of roaches and mice, within 60 days, through monthly fumigations and weekly exterminator visits, and correct all open HPD violations for conditions in the unit. Initial access dates were scheduled for October 28, 29, and 30, 2024, with additional dates to be arranged through counsel or by the parties (NYSCEF 62). The agreement provided that upon default, the matter could be restored for any appropriate relief, including a judicial request for inspection and a finding of contempt.

3

[* 3]

By order to show cause dated March 28, 2025, Respondent moved for a finding of civil contempt based on Petitioner's failure to comply with the terms of the October 21, 2024, so-ordered stipulation (NYSCEF 82). Respondent sought actual damages and fees upon a finding of contempt, in addition to an imposition of civil penalties for failure to timely correct the Housing Maintenance Code violations. This court signed the order to show cause and scheduled a hearing on the motion for May 15, 2025. Affidavits of service reflect timely service on Petitioner's counsel, with additional copies mailed to Petitioner, Ms. Persaud, and Mr. Singh at their registered address (NYSCEF 84-86).

On the return date of Respondent's motion on May 15, 2025, Petitioner's counsel, Novick Edelstein Pomerantz PC (Novick Edelstein), moved, by order to show cause, to withdraw as counsel for Petitioner, alleging, in an affirmation submitted by Craig Zim, the partner at Novick Edelstein typically handling Queens cases, over $60,000 in outstanding legal fees and a breakdown in communication that prevented Novick from further representing Petitioner (NYSCEF 83, 87). In signing the order to show cause, this court directed Petitioner's counsel to serve a copy of its motion by certified mail at Petitioner's office and Scott Edelstein, a partner in Novick Edelstein's office, who represents Petitioner's president, Karan Singh, in connection with his larger portfolio of buildings in the Bronx held under the company Fordham Fulton Realty, Corp. (*see* LT-316487-24/BX, NYSCEF 1), to call or text Mr. Singh by May 22, 2025, to alert him of the pending motion and to file proof of such service. This request was prompted in part by Respondent's counsel Legal Aid Society's (LAS) objection to Novick Edelstein's last-minute motion to withdraw, which necessitated a delay of the hearing of the contempt motion, and was intended to forestall any further delay should Petitioner retain new counsel. Further, as noted by LAS at the May 15, 2025, appearance, Mr. Edelstein and his firm were still actively representing

4

[* 4]

Mr. Singh in defending a contempt motion brought by HPD against him personally in the Bronx for failure to make building-wide repairs (*see* LT-316487-24/BX, NYSCEF 1), and they had recently obtained an affidavit attesting to repairs from Mr. Singh's spouse Rajmattie Persaud Singh on May 5, 2025, well after the LAS contempt motion was filed in this proceeding in March 2025 (*see id.* at NYSCEF 1, NYSCEF 74), seemingly undermining the claim of an inability to communicate.[2]

In addition to signing Petitioner's counsel's order to show cause to withdraw with a return date of June 9, 2025, this court issued a separate order dated May 15, 2025, adjourning the contempt motion to June 9, 2025, and warning Rajmattie Persaud and Karan Singh that they would be held in civil contempt in their individual capacities if, following a hearing, it was determined they were parties in control of Petitioner and had knowingly failed to effectuate compliance with the court's orders. The court directed Respondent's counsel to serve a copy of said order and the underlying motion for contempt on Mr. Singh and Ms. Persaud in a manner reasonably calculated under the circumstances to apprise them of the pending contempt motion (NYSCEF 88).

An affidavit of service, filed July 9, 2025, reflects that Karan Singh was personally served with the underlying contempt motion and the court's May 15, 2025, order on June 6, 2025 (NYSCEF 95), in addition to prior service of the moving papers by mail as directed (*see* Respondent's Hearing Exhibits AP-AQ).

Petitioner's counsel filed proof of service of its motion to withdraw on Petitioner and its

---

[2] Mr. Singh was ultimately held in civil and criminal contempt and fined $10,114,700 in the Bronx proceeding (*see* LT-316487-24/BX, NYSCEF 96, 107). Novick Edelstein remains attorney of record as of August 2025 and has filed an appeal and sought a stay of enforcement of the order (*see id.* at NYSCEF 146, 149).

5

[* 5]

president Mr. Singh on June 9, 2025, in which Mr. Edelstein avers that he spoke to Mr. Singh by phone on May 15, 2025, and advised him of the pending motion for contempt (NYSCEF 90-92).

By separate orders dated June 11, 2025, the court granted Petitioner's counsel's motion to withdraw upon Petitioner's non-appearance (mot. seq. 8) and granted Respondent's motion for contempt (mot. seq. 8) to the extent of setting the matter down for a contempt hearing on July 7, 2025 (NYSCEF 93-94). Neither Mr. Singh nor any other representative appeared on this date, and Petitioner's counsel, Craig Zim, stated to the court that he had entirely lost contact with Mr. Singh.

A contempt hearing commenced on July 7, 2025, and concluded on July 21, 2025. Neither Petitioner nor Mr. Singh appeared at the hearing, despite the phone notification Mr. Singh received from his outgoing counsel, Respondent's counsel's personal service on Mr. Singh of the court's order warning him that he could be held in contempt, and numerous mailings to Petitioner and Mr. Singh at their registered address of the underlying moving papers. Following the hearing, Respondent's counsel submitted a post-trial, written summation on September 4, 2025 (NYSCEF 101), in which she seeks a finding of contempt, actual damages, attorney's fees, and an imposition of civil penalties.

Postcards were mailed to Petitioner by the civil court clerk at its registered mailing address prior to all appearances.

**THE HEARING**

Respondent Iram Nosheen was the sole witness during a two-day hearing held upon Petitioner's default. Ms. Nosheen credibly testified that her rent-stabilized apartment of over ten years has been rendered unlivable because of recurring leaks in her bathroom and severe rodent and roach infestations. Her testimony was supported by dozens of photographs and videos

6

[* 6]

depicting an apartment teeming with rodents and insects, both dead and alive, including live roaches in the refrigerator that make it impossible for Respondent to store any food in her home. Other photos depicted large holes in the floors and walls that allow rodents, vermin, roaches, and other pests to freely roam throughout the apartment. These photos and videos spanned a wide time frame, including October 2024, the month of the stipulation of settlement, January 2025, and July 2025. In one photo, dozens of roaches along with a dead mouse were shown on a single glue trap. Respondent testified that the mice are so prevalent they have chewed through and destroyed all her clothing; that she has had to discard virtually all her belongings, her child's clothes, and the carpeting in the apartment; that she has to constantly eat out; that she buys and places glue traps every week that quickly fill up with roaches and mice; and that the ceiling in her bathroom leaks when it rains, emitting a horrible smell. Respondent testified that she has retained only one dress of sentimental value, even though it too has been chewed through by mice, and that she has otherwise lost virtually all of belongings. Respondent introduced additional photos depicting other unsafe living conditions in the premises, including one of a sharp, exposed, and possibly live wire protruding from the door to the kitchen, which she stated cut her young child.

Respondent further testified that in February 2025, after she and her family returned from vacation, they returned to an apartment without any electricity and a refrigerator full of rotting, stinking food. After calling 911 and Con Edison, Respondent was informed that the outage was due to someone's shutting off her electrical breaker in the basement. Only after urgent pleas directly to Mr. Singh by phone and text was the electricity then restored two days later, without any compensation or explanation.

Respondent, who lives in the home with her young child, husband, and an elderly parent,

7

[* 7]

further testified that she has called and texted her landlord, Mr. Singh, and the absentee, non-live-in superintendent, dozens of times throughout this proceeding, including in the months since the parties settled the matter in October 2024, but that they are never responsive to her, and have never fumigated or fixed the holes in the walls or made meaningful repairs. She testified that the only "repairs" made since the October 2024 stipulation entailed Mr. Singh's sending an exterminator once every one or two months to briefly spray entirely ineffectual poison. She further stated that, after the contempt motion was filed in April 2025, Mr. Singh called her and came to her apartment in June 2025 and promised to make the repairs and to seal the holes in the unit, but that he never followed up; and that Mr. Singh's sister, who lives in the area, has knocked on her door a few times to yell at and harass her and to get her to sign paperwork certifying that the repairs were made without ever offering any assistance.

**DECISION**

To establish civil contempt, "a movant must demonstrate that the party charged with the contempt violated a clear and unequivocal mandate of the court, thereby prejudicing a right of another party to the litigation" (*Scaturro v F.J.H. Realty, Inc.*, 84 Misc 3d 135 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024]). In addition, the movant must establish by clear and convincing evidence that the party had knowledge of the court's order (*see El-Dehdan v El-Dehdan*, 26 NY3d 19 [2015]).

Here, Respondent's unrebutted testimony and evidence satisfy the necessary elements for a finding of civil contempt. The parties' so-ordered stipulation of settlement, dated October 21, 2024, provided an unequivocal mandate to Petitioner to repair "any holes in the walls or floor throughout the unit which exacerbate infestations; and [the] leaking sink" within 30 days, to complete monthly fumigations in the months of November 2024, December 2024, and January

8

[* 8]

2025, and additional months as necessary, as well as weekly exterminator visits, and to, within 60 days, repair and correct and all conditions categorized as open Housing Maintenance Code violations on the HPD website, the latter relief having been previously ordered by Judge Kitson on October 17, 2023, and September 4, 2024, yet seemingly ignored (*see Scaturro v F.J.H. Realty, Inc.*, 84 Misc 3d 135 at fn1; *New York City Hous. Auth. v Porter*, 40 Misc 3d 41 [App Term, 2d Dept, 2d & 11th Jud Dists 2012]; *BNS Bldgs. v Darzi*, 2003 NY Slip Op 50889 [App Term, 1st Dept 2003]).

That Petitioner failed to comply with the court's mandate embodied in the October 21, 2024, stipulation, and, by extension, the prior orders to correct is beyond dispute based on the record presented at the hearing, which reveals a landlord that has exhibited a callous disregard for the health and safety of its tenants. The presence of, as of today's date, 16 open HPD violations in the subject apartment, 11 of which are for Class C, immediately serious conditions, including for roach and mouse infestations, which have been continually reestablished by court-ordered HPD inspections throughout this proceeding, is prima facie proof that these conditions still exist (*see Beverly Holdings N.Y., LLC v Blackwood*, 235 NYS 3d 900 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2025], citing NYC Admin Code § 27-2115[f][7]).

Nor does Petitioner's failure to make urgent health and safety repairs appear to be inadvertent or an isolated incident. Petitioner's principal Mr. Singh is the subject of HPD-initiated comprehensive Housing Part (HP) proceedings in Bronx and Queens counties concerning unmet, building-wide repairs, both at the subject premises and other buildings within his significant portfolio, which, HPD alleges, encompasses at least 11 buildings and 950 units of residential housing (*see* LT-306442-24/QU, NYSCEF 1). In the Bronx proceeding, Judge Diane Lutwak, recently held Mr. Singh in civil and criminal contempt and imposed over $10,000,000 in

9

[* 9]

civil penalties for his failure to correct over 619 open violations (*see* LT-316487-24/BX, NYSCEF 86, 115). In the Queens HPD-initiated HP case, LT-306442-24/QU, concerning the subject, 31-unit building, HPD is seeking to compel repairs and impose civil penalties against Petitioner, Mr. Singh, and Ms. Persaud for their failure to correct 162 open violations (*see* LT-306442-24/QU, NYSCEF 1). Petitioner is now represented in this matter by Sidrane, Schwartz-Sidrane, Perinbasekar & Littman LLP, having appeared and retained counsel on July 15, 2025, only after HPD filed a default judgment motion on June 27, 2025, which remains pending.

Respondent has manifestly been prejudiced by the ongoing conditions in her apartment, which have resulted in dozens of open HPD violations and rendered the premises essentially uninhabitable. The open violations are prima facie proof of the prejudice Respondent has experienced (*see BNS Bldgs. v Darzi*, 2003 NY Slip Op 50889 [App Term, 1st Dept 2003]). Furthermore, Respondent's testimony and evidence at the hearing established that Petitioner's failure to make necessary repairs has impaired her right to an apartment free from conditions determinantal to her health and safety, as required by RPL § 235-b, the legislature's recognition of the fact that a "residential lease is essentially a sale of shelter and necessarily encompasses those services which render the premises suitable for the purpose for which they are leased" (*Park West Mgt. v Mitchell*, 47 NY2d 316 [1979]).

Finally, Petitioner and its principal Mr. Singh unquestionably had actual notice of the orders violated, as well as the instant contempt motion, notwithstanding Petitioner's failure to appear. Such notice was evidenced by Mr. Singh's active participation in this matter prior to defaulting, not merely through his counsel's involvement, but by his submission of an affidavit in opposition to a prior contempt motion (NYSCEF 51), his receipt of the instant motion for contempt and the court's separate order warning him that he could be held in contempt in his

10

[* 10]

individual capacity via in-hand service (NYSCEF 95), his in-person meeting and phone communications with Respondent in June 2025, after the contempt hearing was scheduled, and the notification of the pending motion and hearing provided to Mr. Singh by his former counsel by phone in May 2025 (NYSCEF 90-92), the same counsel who continues to represent him in defending and appealing the Bronx housing court contempt finding against Mr. Singh for similar conduct issued by Judge Lutwak. Accordingly, the court finds Petitioner in civil contempt of its order dated October 21, 2024, directing Petitioner to complete meaningful extermination, seal holes in the floors and walls, and to make all other repairs in the unit necessary to clear all open HPD violations.

Based on the finding of civil contempt, Respondent is entitled to damages for actual loss pursuant to Judiciary Law § 773. Such damages appropriately include compensation for the diminished value of the leased premises as a percentage of the rent reserved in the parties' last lease, essentially replicating a claim for breach of the statutory warranty of habitability (*see Leung v Zi Chang Realty Corp.*, 74 Misc 3d 126 [App Term, 1st Dept 2022] [compensatory damages may include the reduced value of a leasehold]; *79 Audubon Holdings Lp v Rio,* 2010 NYLJ LEXIS 7026 [Civ Ct, NY Co 2010]). Here, the conditions in the subject premises, including recurring, severe roach and mouse infestations that prevent Respondent and her family from eating in the apartment or storing food or clothes, leaks in the bathroom, and a sharp wire that cut Respondent's child, among others, are "deprivations [that are] so substantial…as to result in an abatement of the rent *in toto*" (*Ocean Rock Assoc. v Cruz*, 66 AD2d 878 [2d Dept 1978], *affd* 51 NY2d 1001 [1980]; *see also Liguori v Brookside Garden Assoc., LLC*, 85 Misc 3d 134 [App Term, 2d Dept, 9th & 10th Jud Dists 2025]; *515 E. 81st v Weston*, 86 Misc 3d 131 [App Term, 1st Dept 2025]). Accordingly, the court awards compensatory damages based on a

11

100% reduction of the $1,459.72 monthly rent in the parties' most recent rent-stabilized renewal lease for the period of November 2024, the month in which the repairs were to be completed, through September 2025, for a total of $16,056.92 (11 months multiplied by $1,459.72). In addition, Respondent sufficiently established losses of personal property and other out-of-pocket expenses occasioned by Petitioner's contempt in the amount of $5,000. The clerk is directed to enter a money judgment of $21,056.92 in Respondent's favor as against Petitioner.

As Respondent has elected and received compensatory damages, the court will not award attorney's fees under prevailing, Second Department precedent (*see Saffra v Rockwood Park Jewish Ctr.*, 249 AD2d 480 [2d Dept 1998] ["Supreme Court erred in granting attorneys' fees and expenses pursuant to Judiciary Law § 773, since it awarded actual damages"] citing *Ellenberg v Brach*, 88 AD2d 899 [2d Dept 1982]; *see also Ferrante v Stanford*, 172 AD3d 31 [2d Dept 2019] [noting that Judiciary Law § 773 authorizes costs and fees upon a finding of civil contempt where the movant cannot establish actual damages]; *but cf. Jaime v Jaime*, 19 AD3d 330 [1st Dept 2005]).[3]

In addition to awarding compensatory damages, a court may impose prospective fines as a means of coercing compliance with court mandates from a recalcitrant party, provided the contemnor is given a reasonable opportunity to purge their contempt (*see Mater of People v Trump*, 213 AD3d 503 [1st Dept 2023]; *Ruesch v Ruesch*, 106 AD3d 976 [2d Dept 2013]). Such financial sanctions, which are not compensatory in nature (*see Dept. of Hous. Preserv. & Dev. v Deka Realty Corp.*, 208 AD2d 37 [2d Dept 1995]), need not be commensurate with any actual damages suffered by the aggrieved party, so long as they are neither excessive nor an abuse of

---

[3] If Respondent contends that her costs and fees exceed the actual damages awarded, she may seek modification of this order for purposes of an award of such sums in lieu of actual damages.

12

[* 12]

the trial court's broad discretion to fashion the appropriate remedy in the context of civil contempt (*see Mater of People v Trump*, 213 AD3d at 504).

Here, the court will afford Petitioner 30 days from the date of this order to purge its contempt by correcting all Housing Maintenance Code violations in the subject apartment, sealing all holes in the floors and walls of the unit, and hiring a licensed exterminator to fumigate the premises, as well as engaging in comprehensive, integrated pest management practices as required by Housing Maintenance Code § 27-2017.8. Petitioner is to notify both Respondent and her counsel in writing at least 72 hours prior to any proposed access date, and if the proposed date is unavailable, to promptly discuss and agree to alternative dates. Such repairs should include, if necessary, meaningful extermination and sealing of holes in other units and common spaces within the building, as the court takes judicial notice of the current HPD website reflecting 148 open violations at the subject, 31-unit premises, including two Class C violations for roaches and mice in the unit directly above Respondent's, Apt. 3C, issued on July 12, 2025, Class C violations for roaches in unit 2I, issued on May 28, 2025, and a still open Class C violation for mice in unit 3D, issued a decade ago on September 3, 2015. If Petitioner has not purged its contempt by October 9, 2025, or sought and received an extension of the deadline based on evidence of good faith efforts to purge, the court will impose a financial sanction of $100 per day, commencing the day of this order, September 9, 2025, payable to Respondent in the form of a rent credit for every day until Petitioner demonstrates to the satisfaction of the court that it has purged its contempt (*see New York City Hous. Auth.–Seth Low Houses v Ingram*, 86 Misc 3d 1229 [Civ Ct, Kings Co 2025]).

As for Respondent's request that the court impose civil penalties on Petitioner based on its failure to timely correct open violations of the Housing Maintenance Code, this is denied as

13

[* 13]

such fines, payable by statute to HPD (*see* NYC Admin Code § 27-2115), are more appropriately sought in the ongoing, comprehensive HP-proceeding commenced by HPD against the entire subject building, presently pending under LT-306442-24/QU, and for which there is a pending motion for civil penalties.

Finally, the court finds it appropriate and necessary to hold Petitioner's self-described president, and the registered managing agent, Karan Singh, in contempt in his individual capacity. While normally a new special proceeding is necessary to hold a nonparty in contempt, requiring service of a petition and notice of petition (*see Infinity Tech. Staffing, Inc. v Medlink Vpn, Inc.*, 975 NYS 2d 366 [App Term, 2d Dept, 9th & 10th Jud Dists 2013]), there is no such requirement where the contemnor is a principal or other party in control of the corporation alleged to have violated a court mandate, and it is demonstrated that the individual knowingly participated in the violation of the court order (*see Tishman Constr. Corp. v United Constr. Wrokers, Inc.*, 158 AD3d 436 [1st Dept 2018]; *Vastwin Invs. Ltd. v Aquarius Media Corp*, 295 AD2d 216 [1st Dept 2002]; *Citibank, N.A. v Anthony Lincoln-Mercury, Inc.*, 86 AD2d 828, 829, 447 N.Y.S.2d 262 [1st Dept 1982]).

The record here amply establishes both that Karan Singh is the principal and party in control of Petitioner – he signed the rent demand for the subject nonpayment petition as president of Petitioner, is the registered managing agent, submitted an affidavit in opposition to an earlier contempt motion identifying himself as managing agent, was the person his former counsel identified as its "client" and called to notify him of the firm's motion to withdraw, and has held himself out as Respondent's landlord and reached out to her subsequent to the scheduling of the contempt hearing in an ineffectual attempt at resolving the matter – and that he has been and remains well aware of the court mandates being violated. Further, while it was not

14

[* 14]

necessary that Mr. Singh be personally served to be held in contempt, so long as notice was provided in a manner reasonably calculated to apprise him of the pending contempt proceeding in order to comport with due process (*see Tishman Constr. Corp.*, 158 AD3d 436 [1st Dept 2018]; *Dept. of Hous. Preserv. & Dev. v 24 W. 132h Equities, Inc.*, 137 Misc 2d 459 [App Term, 1st Dept 1987]), Respondent served Mr. Singh personally, at his office, on June 6, 2025, with the instant motion and the court's order warning him that he could be held in contempt individually, in addition to receiving numerous copies of the instant motion and postcards of upcoming appearances from Respondent and the court. It therefore "defies credulity" that Mr. Singh is unaware of the present proceeding or the court's mandates (*see Lipstick, Ltd. v Grupo Tribasa, S.A. de C.V.*, 304 AD2d 482 [1st Dept 2003]). Yet, Mr. Singh has chosen to absent himself, while simultaneously manufacturing the withdrawal of his counsel through his failure to pay legal fees and lack of communication, an absence that is particularly galling given that the same counsel is continuing to represent him in defending the ongoing HPD-initiated compressive proceeding in the Bronx, where Mr. Singh has been fined over ten million dollars for similar violations of the Housing Maintenance Code. While Mr. Singh may feel this single nonpayment proceeding, in which one Respondent and her family are seeking court-mandated repairs after paying all the rental arrears, is not significant enough to justify his presence or attention, his intentional default will not absolve him from liability or accountability. "Compliance with court orders is essential to the integrity of our judicial system and thus, litigants must not be allowed to ignore court orders with impunity" (*Matter of Grayson v New York City Dept. of Parks & Recreation*, 99 AD3d 418 [1st Dept 2012] [internal citations and quotations omitted]). Accordingly, the court finds that Karan Singh is in civil contempt for his intentional violation of the parties' so-ordered, October 21, 2024, stipulation. Mr. Singh is to purge his contempt by

15

[* 15]

completing all the repairs in Respondent's apartment in the same manner as directed of Petitioner

above by October 9, 2025, or the court will issue a warrant of commitment and arrest without

further notice upon proof of timely service of certified copy of this order (*see* Judiciary Law §§

753, 770, and 772; *Department of Hous. Preserv. & Dev. Of the City of N.Y. v Belmont Ventures

LLC*, 2024 NY Slip Op 30891 [Civ Ct, NY Co 2024]; *Ferreira v Guillaume*, 78 Misc 3d 1222

[Civ Ct, Queens Co 2023]).

Accordingly, it is

ORDERED that the court finds Petitioner KRCM REALTY CO. INC. in civil contempt
of the parties' so-ordered stipulation of settlement dated October 17, 2024; and it is further

ORDERED that the court awards compensatory damages pursuant to Judiciary Law §
773 in the amount of $21,056.92 as against Petitioner in favor of Respondent Iram Nosheen and
directs the entry of a money judgment; and it is further

ORDERED that the court finds nonparty Karan Singh in civil contempt of the so-ordered
stipulation of settlement dated October 17, 2024; and it is further

ORDERED that the court directs Petitioner and nonparty Karan Singh to purge their
contempt by completing all repairs in the subject apartment in the manner described above by
October 9, 2025, or to obtain an extension prior to this deadline upon proof of good faith efforts
to purge, or the court will impose financial sanctions against Petitioner in the amount of $100 per
day, to be applied as a rent credit in Respondent's favor, commencing as of the date of this order,
September 9, 2025, and continuing until all repairs are made and all violations in the subject
apartment are corrected to the satisfaction of this court; and it further

ORDERED that the parties, including Mr. Singh, are to appear in Part F on October 10,
2025, at 930am for purposes of determining whether Petitioner and Mr. Singh have purged their
contempt and if additional contempt sanctions are warranted; and is further

ORDERED that in the event Mr. Singh has not purged his contempt as of the October 10,
2025, court date, or demonstrated to the satisfaction of the court good faith efforts to purge, the
court will issue a warrant of commitment and arrest without further notice pursuant to Judiciary
Law §§ 753, 770, and 772; and it is further

ORDERED that Respondent's counsel is to serve copies of this order by September 11,
2025, by priority or overnight mail on Petitioner and nonparty Mr. Singh, and, to further ensure
Mr. Singh is made aware of this order, to email copies to Mr. Singh's counsel in the HPD-
initiated proceeding in the Bronx, Scott Edelstein, and to his attorney in the HPD-initiated

16

[* 16]

proceeding Queens, Sidrane Schwartz, and to the HPD to the attorney presently litigating the HPD comprehensive proceedings in Queens and the Bronx, Paul Gdanski, and to file proof of such service by September 12, 2025.

This constitutes the decision and order of the court.

Dated: September 9, 2025
Queens, NY

HON. LOGAN J. SCHIFF
Judge, Housing Court

17